871 So.2d 317 (2004)
STATE of Louisiana
v.
Danny PARKER.
No. 2003-K-0924.
Supreme Court of Louisiana.
April 14, 2004.
Charles C. Foti, Jr., Atty. Gen., Walter P. Reed, District Atty., Dorothy A. Pendergast, Metairie, Counsel for Applicant.
William R. Campbell, Jr., New Orleans, Frank Sloan, Covington, Counsel for Respondent.
Ellis P. Adams, Jr., Counsel for amicus curiae Louisiana District Attorney's Ass'n.
KIMBALL, Justice.
The issue presented in this case is whether the ameliorative changes in Louisiana's habitual offender law, La. R.S. 15:529.1, apply only to those cases in which the defendant commits the charged crime *318 after the effective date of the amending act or whether they can be applied to a defendant who is adjudicated a habitual offender after the effective date of the amending act, but whose crime was committed prior to the effective date of the amending act. Based on the language of the amending act, this court's well-settled jurisprudence, and the policy considerations involved, we conclude that the applicable habitual offender provisions are those that were in effect at the time of the commission of the charged offense. Accordingly, we reverse that portion of the court of appeal's judgment to the contrary.

Facts and Procedural History
Defendant, Danny Parker, was charged by bill of information in count one with possession of a Schedule III controlled dangerous substance (Dihydrocodeinone) in violation of La. R.S. 40:968(C), and in count two with possession of a Schedule IV controlled dangerous substance (Diazepam) in violation of La. R.S. 40:969(C). The alleged offense occurred on March 25, 1997. Defendant pled not guilty to both counts, and was subsequently tried and convicted on both counts by a six-person jury.
Thereafter, the State filed a habitual offender bill, alleging with respect to count two that defendant was a third felony offender because he had previously pled guilty to aggravated battery in violation of La. R.S. 14:34 and he was previously convicted for distribution of a Schedule II controlled dangerous substance (cocaine) in violation of La. R.S. 40:967. Following a hearing, the district court adjudicated defendant as a third felony offender. On August 3, 1999, defendant was sentenced to concurrent sentences of five years at hard labor on count one and life imprisonment without benefit of parole, probation, or suspension of sentence as a third felony offender on count two.
Defendant filed an appeal, and, on November 9, 2001, the court of appeal affirmed the convictions on both counts and the sentence on count one, but vacated the habitual offender adjudication and sentence on count two.[1] The matter was remanded to the district court for further proceedings. State v. Parker, 00-2861 (La.App. 1 Cir. 11/9/01), 818 So.2d 85.
On March 4, 2002, following a hearing on remand, the district court again adjudicated defendant a third felony offender and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence pursuant to the provisions of La. R.S. 15:529.1(A)(1)(b)(ii) in effect at the time of the commission of the crime. Defendant objected to the sentence, arguing that it was excessive in light of changes in the habitual offender law that became effective after the time of the commission of the third felony offense and conviction, but before his re-adjudication as a habitual offender.
Defendant again appealed the habitual offender adjudication and sentence, and the court of appeal affirmed the habitual offender adjudication. State v. Parker, 02-1477 (La.App. 1 Cir. 3/5/03), 845 So.2d 546. However, the court of appeal vacated the habitual offender sentence because it concluded that defendant should have been sentenced according to the amended provisions of the habitual offender law that were in effect when he was properly adjudicated a third felony offender by the district court. Id. Although the court acknowledged *319 that State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, reiterated this court's consistent holding that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted defendant must suffer, the majority distinguished the instant situation on several grounds. The majority noted that the habitual offender law, as amended after defendant's commission of the crime, but before he was properly adjudicated a third felony offender and sentenced therefor, is a penalty enhancement statute rather than a statute that imposes a sentence for a particular offense. The court of appeal also distinguished Sugasti on the basis of its determination that "a defendant is not a habitual offender simply by virtue of committing a third felony offense." Parker, 02-1477 at p. 5, 845 So.2d at 550. Since defendant is not a habitual offender subject to the punishment prescribed by the law until the district court so finds, the court of appeal reasoned that the amended provisions should be applicable to a defendant found to be a habitual offender after the effective date of the amendment. In reaching this conclusion, the court of appeal focused on La. R.S. 15:529.1(D)(3), which includes the language "[w]hen the judge finds." Thus, the majority vacated the sentence imposed and remanded the case to the district court for re-sentencing.
We granted the State's request for certiorari to consider whether defendant should be sentenced according to the habitual offender law in effect at the time of the commission of the offense or that in effect at the time of the habitual offender adjudication and sentencing. State v. Parker, 03-0924 (La.12/19/03), 864 So.2d 608.

Discussion
In its sole assignment of error, the State argues that the court of appeal erred when it departed from this court's jurisprudence and ruled that defendant should be sentenced according to the new provisions of the habitual offender law in effect at the time of the habitual offender adjudication rather than those in effect at the time of the commission of the predicate felony.[2] The State points out that the habitual offender law does not establish an independent crime, but prescribes an enhanced penalty for certain subsequent offenses. The State also asserts that the amending language itself mandates that the new provisions be applied prospectively only. Defendant, on the other hand, asserts that the penalties prescribed by the multiple offender law apply only after there has been a judicial determination that a convicted person is, in fact, a habitual offender. Thus, defendant argues, the date of the adjudication as a habitual offender must dictate the applicable habitual offender sentencing provisions.
The relevant habitual offender statute in effect at the time defendant committed the crime at issue and at the time of his conviction, La. R.S. 15:529.1, provided in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

*320 (ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under La. R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(Emphasis added). This version of La. R.S. 15:529.1 was in effect at the time defendant committed the crime, at the time he was convicted, and at the time he was first adjudicated a third felony offender and sentenced accordingly. As explained above, however, this initial adjudication was vacated by the court of appeal and the matter was remanded to the district court because the court of appeal found that the State had failed to present adequate proof that defendant had been represented by counsel when he entered a guilty plea to one of the prior offenses alleged in the habitual offender bill and that defendant's guilty plea was informed and voluntary and made with an articulated waiver of his Boykin[3] rights. Parker, 00-2861 at p. 8, 818 So.2d at 90.
On remand, defendant was again adjudicated a third felony offender and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on March 4, 2002. By this time, Act No. 403 of 2001, which included an amendment to those provisions of La. R.S. 15:529.1 applicable to the instant case, had been enacted by the legislature in an attempt to reduce incarceration rates for non-violent offenders and to ease the financial burden on the state. State v. Sugasti, 01-3407, p. 3 (La.6/21/02), 820 So.2d 518, 520. Effective June 15, 2001, Act 403 amended La. R.S. 15:529.1 to provide, in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13)... or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(Emphasis added). Act 403 explicitly provides that "[t]he provisions of this Act shall only have prospective effect." 2001 La. Acts No. 403, § 6.
The ameliorative changes made to La. R.S. 15:529.1(A)(1)(b)(ii) by Act 403, if applicable, drastically reduce defendant's sentencing exposure. Under the version of La. R.S. 15:529.1 in effect at the time of the commission of the offense, it was mandatory that a defendant be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence, if only one of the felonies committed by defendant was defined as a crime of violence, a particular sex offense, *321 or a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years, or was any other crime punishable by imprisonment for more than twelve years. Pursuant to this version of the statute, defendant's prior felony conviction for aggravated battery, which is defined as a crime of violence under La. R.S. 14:2(13), would suffice for imposition of a life sentence. In contrast, under the amended version of La. R.S. 15:529.1(A)(1)(b)(ii), each of the three felonies committed by a defendant must be defined as a crime of violence under La. R.S. 14:2(13), certain enumerated sex offenses, or a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or be any other crime punishable by imprisonment for twelve years or more before defendant will be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. Defendant's third felony does not meet any of the requirements of La. R.S. 15:529.1(A)(1)(b)(ii) as amended by Act 403. Therefore, under the amended habitual offender law, the applicable sentencing provision for defendant would be that contained in La. R.S. 15:529.1(A)(1)(b)(i).[4] Consequently, if the amended version of the habitual offender law is applicable to defendant's adjudication as a third felony offender, defendant would be exposed to a maximum term of only ten years imprisonment at hard labor.
This court faced a similar issue years ago when it considered comparable ameliorative changes to the habitual offender law in State v. Dreaux, 205 La. 387, 17 So.2d 559 (1944). In Dreaux, the defendant committed the crime of assault and robbery on July 24, 1942. The robbery was his second felony offense, and at that time 1928 La. Acts 15 provided that a second offender "must be sentenced to imprisonment for a term not less than the longest term, nor more than twice the longest term, prescribed for a first conviction." On July 29, 1942, five days after commission of the offense, 1942 La. Acts 45 went into effect and provided that a second offender "must be sentenced to imprisonment for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction." The defendant in Dreaux was thereafter convicted of the charged offense on September 24, 1942, and, in November 1942, he was adjudicated and sentenced as a second offender under 1928 La. Acts 15, which was the version of the law in effect at the time of the commission of the offense, to a term of not less than fourteen years nor more than twenty-eight years at hard labor in the State Penitentiary. The defendant then filed a motion to set aside the alleged illegal sentence on grounds that because he had been adjudicated and sentenced as a habitual offender after the effective date of the less severe provisions of 1942 La. Acts 45, he should have received benefit of the ameliorative change in the law. The district court denied the motion.
On appeal, this court began by stating that the resolution of the issue of which version of the habitual offender law to apply depends upon the date the defendant became a second offender. We noted that the habitual offender law does not establish a crime, but merely prescribes a heavier penalty for the repetition of criminal *322 conduct by a person who has been previously convicted of a felony. We then reasoned as follows:
The heavier or enhanced punishment being for the new crime only is necessarily incurred at the time the defendant committed the second felony, although the legal proceedings under which his guilt was formally established were had subsequently. Briefly, his own acts and conduct which constitute a violation of the criminal law make him a second offender as of that date.... The sentence of the court shows that he was punished for the crime he committed. The proceeding under either of the Habitual Criminal Statutes in question is merely the legal procedure through which the State must establish that the defendant is a second offender. Necessarily, the State must prove that the accused had been previously convicted twice of a felony before he can be punished as a second offender.
Dreaux, 205 La. at 391-92, 17 So.2d at 560. We went on to note that if we were to find a defendant's status as a second offender was fixed as of any date other than the commission of the offense, "it would be within the power of the district attorneys and the Attorney General, by delaying the filing of the charges and prosecution of the case, to fix the accused's status as a second offender at practically any time he desired." Id. at 392, 17 So.2d at 560. Thus, we also found public policy dictated that defendant's habitual offender status be fixed as of the date of the commission of the crime since this allows defendant's own act to establish his status rather than leaving the matter in the discretion of government attorneys. This court rejected the defendant's claim that the legislature's enactment of a less severe penalty established a new policy of more leniency towards habitual offenders on grounds that such arguments of policy and equity address themselves to the Board of Pardons. Id. at 396, 17 So.2d at 562. In light of the above analysis, we concluded that the defendant became a second offender on the date he committed the predicate crime and was therefore subject to the punishment provided for by the law as it existed on that date.[5]Id.
Following Dreaux, this court has consistently held that habitual offender proceedings do not charge a separate crime but merely constitute ancillary sentencing proceedings such that the punishment for a new conviction is enhanced. See State v. Dorthey, 623 So.2d 1276, 1278-79 (La.1993); State v. Walker, 416 So.2d 534, 536 (La.1982); State v. Williams, 326 So.2d 815, 818 (La.1976). Additionally, it is generally settled that the law in effect at the time of the commission of the offense is determinative of the penalty which is to be imposed upon the convicted accused. See State v. Narcisse, 426 So.2d 118, 130 (La.1983). State v. Wright, 384 So.2d 399, 401 (La.1980); State v. Gros, 205 La. 935, 938, 18 So.2d 507, 507 (1944), cert. denied, 326 U.S. 766, 66 S.Ct. 170, 90 L.Ed. 462 (1945). Finally, "[t]he mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible penalty to be imposed, does not extinguish liability for the offense committed under the former statute." Narcisse, 426 So.2d at 130.
We recently reaffirmed these principles in State v. Sugasti, 01-3407 (La.6/21/02), *323 820 So.2d 518, a case wherein we considered what, if any, retroactive effect an ameliorative amendment to La. R.S. 40:966(C) had on narcotics violations committed before its effective date. There, this court considered the 2001 amendment to La. R.S. 40:966(C)(1), which was also enacted pursuant to the provisions of Act 403, that deleted the language "without benefit of probation or suspension of sentence" from the penalty provision at issue, thereby making persons convicted of heroin possession eligible for a suspended sentence. In Sugasti, the defendant committed the crime of possession of heroin in violation of La. R.S. 40:966(C) on September 5, 1998. On June 21, 2001, the defendant entered a negotiated plea of guilty as charged to three offenses, including possession of heroin, and the district court subsequently ordered defendant's sentences to be suspended. The State objected to the imposition of suspended sentences, arguing that Act 403, which allowed for a suspended sentence for a violation of La. R.S. 40:966(C), did not apply to drug offenses committed in 1998 prior to the amendment of the statute. In considering whether defendant was entitled to suspended sentences, we cited our earlier jurisprudence holding that an ameliorative change in the penalty provision of a statute which occurs after the commission of the offense is inapplicable and that the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense. Sugasti, 01-3407 at pp. 4-5, 820 So.2d at 520-21.[6] We also noted that Act 403 specifically provides that its provisions shall have prospective effect only, commenting that had the legislature intended the more lenient sentencing provisions to be immediately effective, it could have signified that intent in the Act. Id. at p. 5, 820 So.2d at 521. Additionally, we reiterated the strong presumption against retroactivity of statutes. Finally, we found that policy reasons militated against holding that the amendment applied to anyone sentenced after its effective date because to do so would encourage defendants to continually delay prosecution in the hope that a more lenient sentence would be enacted. We also found it would be grossly unfair to two defendants who committed the same crime on the same day to be sentenced under different penalties if one defendant should successfully delay his punishment until after the benefits of a reduced penalty go into effect. Accordingly, we concluded that the ameliorative provision to La. R.S. 40:966(C)(1) made by Act 403 did not apply when the offense was committed prior to its effective date.
In a nearly identical case handed down the same day, State v. Mayeux, 01-3408 (La.6/21/02), 820 So.2d 524, the defendant pled guilty to possession of heroin, a crime which occurred prior to the effective date of Act 403, and the district court issued a suspended sentence for the violation of La. R.S. 40:966(C). For the reasons assigned in Sugasti, we affirmed the court of appeal's order to set aside the suspended sentence as illegal.
*324 We again considered the issue of the applicability of Act 403 to crimes committed before its effective date in State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354. Although Barnes is merely a per curiam opinion decided by a four-vote majority,[7] we specifically reaffirmed the principles announced in the jurisprudence discussed above, stating:
Under the rule set out in Louisiana jurisprudence, the changes mandated by 2001 La. Acts 403 do not apply to sentences imposed for crimes committed before the [A]ct's effective date. Operation of this rule extends to habitual offender sentences imposed pursuant to R.S. 15:529.1.
Id. (internal citations omitted).[8]
In concluding that the defendant should receive the benefit of the more lenient sentencing provisions provided by Act 403, the court of appeal in this case focused on the trial-like aspect of habitual offender proceedings held pursuant to La. R.S. 15:529.1, in which the State must file a bill of information charging the defendant as a habitual offender and thereafter prove beyond a reasonable doubt any allegation of fact, unless the defendant stipulates to the habitual offender bill, and in which the trial court must make an express finding with regard to the defendant's habitual offender status as a prerequisite to enhanced sentencing. Parker, 02-1477 at pp. 5-7, 845 So.2d at 550-51. See La. R.S. 15:529.1(D). Given this statutory mechanism for adjudicating and sentencing a defendant as a habitual offender, the court of appeal took for granted that "a defendant is not a habitual offender simply by virtue of committing a third felony offense.... Unless and until a separate bill of information is filed by the district attorney after the defendant's felony conviction, there will never be a finding of habitual offender status to justify the enhanced penalty pursuant to the statute." Id. at p. 5, 845 So.2d at 550. Citing La. R.S. 15:529.1(D)(3), the court found it "very clear" that defendant is subject to the enhanced penalties provided in La. R.S. 15:529.1 only when defendant acknowledges his status as a habitual offender or "when the judge finds" he had been convicted of a prior felony or felonies. Id. at p. 6, 845 So.2d at 550. The court stated, "Until that finding or acknowledgment occurs, the defendant is not a habitual offender and, therefore, is not subject to the punishment prescribed" in the habitual offender law. Id. From this premise, the court of appeal concluded that in cases in which the habitual offender hearing is conducted after the effective date of Act 403, the defendant must be subject to the punishment prescribed as of that date, not under provisions pre-dating the adjudication. Id. In the view of the court of appeal, this approach "fully accords with the legislature's statement that the amendments to LSA-R.S. 15:529.1 in 2001 La. Acts No. 403, § 6 `shall only have prospective effect.'" Id. at p. 6, 845 So.2d at 550-51.
In reaching this determination, the court of appeal distinguished this court's decision in Sugasti on the basis that the present habitual offender situation, in which a combination of convictions merge to require *325 enhanced punishment, does not involve a sentence for a particular offense like the one addressed in Sugasti. While it found the legal principles on which Sugasti was based "unassailable" when applied to the individual crimes addressed in Act 403, the court of appeal found the instant case is more analogous to State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, which was rendered on the same day as the Sugasti decision.
Mayeux involved a violation of La. R.S. 14:98(E), driving while intoxicated, fourth offense (fourth DWI) that occurred on February 22, 2000. Effective August 15, 2001, the legislature enacted Act 1163, which changed the way the offender is to serve the sentence imposed by the court. On September 27, 2001, the defendant pled guilty and was sentenced pursuant to La. R.S. 14:98(E) as it existed at the time of the commission of the offense.
Under the law as it existed at the time of the offense, a fourth DWI offender faced a penalty of not less than ten years at hard labor and not more than thirty years at hard labor, at least two years of which ran without benefit of suspension of sentence, parole or probation. Under the amended version of the law, the fourth DWI offender faces only sixty days of mandatory jail time and the court is required to suspend the remaining portion of the sentence and order the offender to undergo an evaluation to determine the nature and extent of his substance abuse disorder. In this case, we specifically noted that Act 1163 contained no statement regarding the retroactivity of its provisions. However, we found the amended version should apply to the defendant because the statute providing for the penalty specifically stated that the defendant shall be punished for a specific term "upon conviction," because the amended version of the statute contained a specific statement of legislative purpose that indicated its intention to embrace treatment measures in preference to incarceration, and because the amending legislation allowed home incarceration for those previously convicted. Although we acknowledged the general rule that the law in effect at the time of the commission of the offense is determinative of the penalty the convicted accused must receive, we found the general rule must yield in cases such as this where the specific statutory provisions of the amended law required the applicable law to be that in effect at the time of defendant's conviction. In Sugasti, we distinguished the provisions of Act 403 from those contained in Act 1163, upon which our decision in Mayeux was based, on grounds that Act 1163 contained specific language that negated the general rule and because Act 1163 did not include a statement that its provisions were to have prospective effect only.
We find the court of appeal erred when it distinguished Sugasti from the instant case and failed to apply the settled principles enunciated in the Sugasti decision. It was established long ago in Dreaux that a defendant becomes a habitual offender on the date he commits the charged crime. The court of appeal's opinion, however, rests on a premisethat a defendant is not a habitual offender until he is formally adjudicated such an offenderthat was long ago discarded by this court in the context of statutes that possessed the same trial-like aspects as the current habitual offender law found in La. R.S. 15:529.1. While it is true La. R.S. 15:529.1(D)(3) provides that defendant shall be sentenced as a habitual offender only "[w]hen the judge finds" that he has been convicted of a prior felony or felonies, this language merely references the determination required to be made by the judge at the conclusion of the habitual offender hearing. A defendant is not convicted of *326 being a habitual offender. Rather, a defendant is adjudicated a habitual offender as a result of prior felony convictions. The sentence to be imposed following a habitual offender adjudication is simply an enhanced penalty for the underlying conviction.
We also conclude that the court of appeal erred in relying on our decision in Mayeux as support for its determination that defendant should be sentenced according to the version of La. R.S. 15:529.1(A)(1)(b)(ii) that was in effect at the time he was properly adjudicated a habitual offender. Given the traditional principles reaffirmed in Sugasti, our decision in Mayeux is limited to the peculiar language used in the statutory provisions at issue, the absence of an expressed intent regarding retroactivity, the unusually strong and explicit declaration of legislative intent to change the focus of the war against drunken driving from punishment to treatment and rehabilitation in the case of chronic offenders, and the fact that the statute's ameliorative effects may be applied to those already convicted.
After consideration of the language of Act 403, this court's well-settled jurisprudence, and the policies involved, we conclude that defendant should be sentenced in accord with the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense. The general rule long applied in this state is that the law in effect at the time of the commission of the offense determines the penalty to be applied to the convicted accused. As previously explained, defendant became a third felony offender on the date he committed the underlying felony offense. He was therefore subject to the punishment provided for by the law as it existed on that date; that is, defendant should be punished pursuant to the provisions of La. R.S. 15:529.1(A)(1)(b)(ii) in effect prior to the ameliorative changes made by Act 403. This decision is in accord with the statement in Act 403 that its provisions shall have prospective effect only and with Louisiana's strong presumption against retroactivity of statutes.[9] As we noted in Sugasti, the legislature could have employed language in Act 403 signifying its intent that the more lenient sentencing provisions were to take immediate effect if it so desired.
Policy considerations also convince us that the applicable penalty provision is that existing on the date of the commission of the offense. The contrary determination that defendant is subject to the penalty provision in effect at the time of his adjudication as a habitual offender would allow the district attorney, rather than defendant's own act, to control the fixing of defendant's status as a habitual offender and the applicable penalty depending on when the habitual offender bill is filed. Concomitantly, if we were to adopt the position that the date of the habitual offender adjudication fixes the applicable penalty provision, some defendants might be encouraged to delay proceedings to coincide with the effective dates of more lenient sentencing provisions. Either of these situations would wreak havoc with our sense of fairness, and, in a practical sense, with the dockets of the courts.
Finally, we recognize that the purpose of the provisions of Act 403 at issue was to reduce the sentences of certain habitual offenders in order to ease the financial burden on the state. We note, however, that the Act contains no indication that the *327 legislature intended for the provisions of La. R.S. 15:529.1(A)(1)(b)(ii), as amended by Act 403, to apply to all sentences imposed following the effective date of the statute. Thus, given the language employed in the Act, including the specific declaration that the provisions of the Act are to have prospective effect only, and the policy considerations explained above, we reaffirm the principles and analysis consistently employed in our prior jurisprudence. Consequently, we find that defendant should be sentenced according to the law that was in effect at the time he committed the offense.

Conclusion
For all the reasons expressed herein, we conclude that the punishment to be imposed on defendant, a habitual offender, is that provided by La. R.S. 15:529.1 as it existed on the date he committed the underlying offense. We therefore reverse that portion of the court of appeal's judgment that vacated the habitual sentence imposed on defendant by the district court. However, because it determined that defendant's habitual offender sentence was improper, the court of appeal pretermitted consideration of defendant's second assignment of error contending the sentence imposed was unconstitutionally excessive. We therefore remand this case to the court of appeal for consideration of defendant's remaining assignment of error that was pretermitted on appeal.
Reversed and Remanded.
CALOGERO, C.J., concurs.
WEIMER, J., additionally concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
WEIMER, J., concurring.
I agree with Justice Kimball's opinion.
In the instant case, the detailed and thoughtful evaluation by the court of appeal majority prompted the writ grant. This court has previously addressed the issue in the context of the habitual offender law. State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354 (decided after the court of appeal's decision herein), and State v. Dreaux, 205 La. 387, 17 So.2d 559 (1944).
As the author of State v. Sugasti 01-3407 (La.6/21/02), 820 So.2d 518, and State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, which illustrate that statutory scrutiny is essential, I agree with Justice Kimball's thorough analysis of the issues presented. I write separately to state that although this court applies the law, it is within the legislative purview to determine policy related to the punishment range.[1] As it is the legislature's responsibility to make these significant policy determinations, it was the legislature's responsibility to decide whether the more lenient provisions were to apply to persons who committed the crime prior to the amendments.
*328 Instead of providing retroactive applicability for the revisions, the legislature chose prospective effect only.
The language of LSA-R.S. 15:529.1(D)3, which states "when the judge finds," merely refers to the procedure the judge must utilize in making a determination the defendant engaged in prior criminal activity. A defendant is not convicted of being a habitual offender. Rather, defendants are adjudicated as multiple offenders because of prior convictions. The sentence being imposed following such adjudication is an enhanced penalty for the underlying conviction. Read in context, the "when the judge finds" phrase is not sufficiently clear to result in a departure from the well-established rule that one is wedded to the penalty as of the date of the crime. See Dreaux, 205 La. at 391, 17 So.2d at 560; see also, State v. Clark, 391 So.2d 1174 (La.1980); accord, State v. Paciera, 290 So.2d 681 (La.1974). A defendant's sentence is fixed based on his action in committing criminal activity. Thus, a defendant's voluntary act of engaging in criminal activity establishes his sentencing fate. This is especially so when the statute specifically refers to prospective effect only.
The "prospective effect" language was conspicuously absent in the driving while intoxicated provision of LSA-R.S. 14:98(E) as amended by 2001 La. Acts No. 1163, the amendment addressed in Mayeux, 01-3195, 820 So.2d 526. However, such language was present in the amendment to LSA-R.S. 40:966(C)(1) enacted by 2001 La. Acts No. 403, and addressed in Sugasti, 01-3407, 820 So.2d 518. In those two cases the court distinguished Act 403 from the provisions of Act 1163. The provisions in Act 1163 (which amended the driving while intoxicated statute) retained the sentencing ranges provided for third and fourth offense driving while intoxicated violations, but radically changed the way the offender may serve the sentence imposed by the court. Act 1163 did not include language specifying only prospective effect; Act 1163 simply went into effect on August 15, 2001. Sugasti, 01-3407 at 5-6, 820 So.2d at 521.
Significantly, in the statutory provision presently before this court, there is no indication of retroactive application, unlike Act 1163 which specifically stated the ameliorative effect of that statute could be applied to those who were already convicted. See Mayeux, 01-3195 at 5-6, 820 So.2d at 529-530. (Language in the amending legislation grants potential relief to those already convicted; see Section 4 of Act 1163.) Thus, the decision in Mayeux is an outlier, attributable to the particular language used in the amendment. Mayeux underscores it is the legislature that makes the policy determinations regarding punishment.
JOHNSON, Justice dissenting, assigns reasons.
The defendant, Danny Parker, is only one of hundreds of criminal defendants in Louisiana who have been convicted of drug offenses and sentenced as habitual offenders to life imprisonment without benefit of parole, probation or suspension of sentence. In the instant case, Mr. Parker was tried and convicted of one count of possession of a Schedule III controlled dangerous substance, and one count of possession of a Schedule IV controlled dangerous substance. Due to his two previous convictions, he now faces a life sentence pursuant to the provisions of La. R.S. 15:529.1(A)(1)(b)(ii) in effect at the time of the commission of the crime. This result is not only draconian, but in my mind the Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution have *329 been violated by the excessiveness of this sentence in comparison to the crime for which he has been convicted.
Trial courts have the authority to reduce a mandatory minimum sentence provided by the multiple offender statute for a particular offense and offender, if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. Further, this Court held in State v. Dorthey, 623 So.2d 1276 (La.1993), that if, in sentencing a defendant, the trial judge were to find that the punishment mandated by the habitual offender statute made no measurable contribution to acceptable goals of punishment or that the sentence amounted to nothing more than purposeful imposition of pain and suffering and was grossly out of proportion to the severity of the crime, the trial judge would have the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. Id. at 1280-81.
In State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282, the Fourth Circuit Court of Appeal vacated the life sentence of a fourth felony habitual offender sentenced pursuant to La. R.S. 15:529.1(A)(1)(c)(ii) for distribution of one rock of crack cocaine, after the court concluded that the defendant distributed drugs to support his habit. Burns, 723 So.2d at 1019. The lower court also cited the economic impact of a life sentence, specifically, that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposed an undue burden on taxpayers of the State who must feed, house, and clothe the defendant for life, and provide geriatric care in later years. Id. at 1020.
The amendments to La. R.S. 15:529.1 were enacted by the Louisiana legislature to ease the financial burden on the State by reducing incarceration rates for nonviolent offenders. State v. Sugasti, 01-3407, p. 3 (La.6/21/02), 820 So.2d 518, 520. As pointed out in the majority opinion, the changes made to La. R.S. 15:529.1(A)(1)(b)(ii), if applied to the instant case, expose the defendant to a maximum term of only ten years imprisonment at hard labor. I reiterate my reservations expressed in the Sugasti dissent:
"It is illogical to conclude that the legislature intended that drunk drivers convicted under La. R.S. 14:98(G) must be sentenced under the post-amendment provisions, even though the underlying offense occurs prior to the amendment, based on the stated legislative purpose, but conclude that the legislature did not intend the same result for those offenders found guilty of minor drug offenses."

Sugasti, 820 So.2d at 522.
Recent statistics indicate that prisoners convicted of drug related offenses make up 27% of the total incarcerated population in Louisiana, compared to only 20% in the United States as a whole. These figures must be contrasted with violent crime statistics, which indicate that 44% of the prison population in Louisiana were incarcerated for violent crimes, compared to 49% in the United States as a whole. Thus, drug offenders make up nearly one-third of the incarcerated population in Louisiana, compared to only one-fifth nationally.
It is clear that the legislative intent in amending La. R.S. 15:529.1 was to enact a more rehabilitive sentencing scheme for non-violent offenses. Sugasti, 820 So.2d at 523-24. I support the imposition of lengthy prison sentences in cases involving high-volume drug transactions or in situations where the State has proven that the defendant involved is high in the chain of drug distribution. In the instant case, the defendant was not charged or convicted of *330 such an offense. For this reason, I respectfully dissent.
NOTES
[1] The court of appeal reversed the multiple offender adjudication and the sentence on count two because it found the evidence presented was insufficient to support the use of the aggravated battery conviction, which was based on defendant's guilty plea, to establish defendant's status as a third felony offender.
[2] The court of appeal affirmed the district court's adjudication of defendant as a third felony habitual offender, and defendant did not seek review of this portion of the court of appeal's judgment in this court. Accordingly, the adjudication of defendant as a third felony habitual offender is now final.
[3] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[4] La. R.S. 15:529.1(A)(1)(b)(i) provides, "The person shall be sentenced to imprisonment for a determinate term not less than twothirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction...."
[5] This court went on to hold, however, that defendant had in fact received an illegal, indeterminate sentence, and that he should have been sentenced to a determinate term of imprisonment under the law in effect both at the time he committed the predicate offense and at the time he pleaded guilty as a second offender and was sentenced as such. We therefore vacated the sentence and remanded the case for resentencing.
[6] Specifically, quoting State v. Clark, 391 So.2d 1174 (La.1980), we stated:

[A]n ameliorative change in the penalty provision of a statute which occurs after the commission of the offense is a factor to be weighed by the trial judge in imposing sentence. However, this court noted [in Clark] that it is the rule in this state that the penalty provision in effect at the time of the offense is the applicable provision. Although the trial judge should consider the ameliorative changes in the law in imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense.
Sugasti, 01-3407 at p. 5, 820 So.2d at 520-21 (internal quotation and citation omitted).
[7] One of the reasons we granted the State's application for certiorari in this matter was to consider more fully this issue that split the court's vote in Barnes.
[8] We note the court of appeal in the instant case did not have benefit of this per curiam opinion when it issued the judgment under review since Barnes was handed down approximately a month after the court of appeal vacated defendant's habitual offender sentence.
[9] See La. R.S. 1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated.")
[1] In Act 403 of 2001, the legislature addressed the grave societal problem of prison overcrowding resulting, in part, from increasingly harsher sentences imposed during the past 30 years. As Judge Daley aptly noted in his dissent in State v. Flagg, 01-0965 (La.App. 5 Cir. 3/26/02), 815 So.2d 208, the legislature decided that certain combinations of crimes, which previously resulted in life sentences, no longer warranted life sentences. Making a policy determination that the harsher sentences are no longer appropriate for the offenses, the legislature enacted comprehensive statutory revisions in an effort to alleviate the enormous prison overcrowding problem with its resulting costs to the public fisc. The statutory revisions evidently reflect the legislative determination that long term incarceration in some instances does not cure societal ills and is too costly.

The issue in this case is to determine to whom these revisions apply.