# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 18-721


**STATE OF LOUISIANA**

**VERSUS**

**WILLIAM CHESTER FARRY JR.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 17654-15
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.


**AFFIRMED.**

**John Foster DeRosier**
**District Attorney**
**14th Judicial District**
**Post Office Box 3206**
**Lake Charles, Louisiana  70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Elizabeth Brooks Hollins**
**Assistant District Attorney**
**14th  Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Ross Murray**
**Assistant District Attorney**
**14th Judicial District Court**
**901 Lakeshore Drive, Suite 600**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**William Chester Farry Jr.**

**CONERY, Judge.**

Following proceedings on remand, Defendant, William Farry, appeals the trial court's rejection of his ineffective assistance of counsel claim. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

A jury convicted Defendant of armed robbery. The trial court ultimately found Defendant to be a third habitual offender and sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. This court affirmed Defendant's armed robbery conviction in *State v. Farry*, 16-210 (La.App. 3 Cir. 11/16/16), 206 So.3d 1222, *writ denied*, 17-301 (La. 10/16/17), 228 So.3d 753. By separate opinion, the court conditionally affirmed Defendant's habitual offender sentence. *See State v. Farry*, 16-211 (La.App. 3 Cir. 11/16/16), 207 So.3d 438. However, in this latter review, the panel remanded the matter for an evidentiary hearing to address Defendant's contention that his trial counsel was ineffective in failing to object to or to file a motion to reconsider sentence on the basis that a downward departure of the mandatory sentence was warranted. *Id.*

On remand, Judge David Ritchie conducted the ordered evidentiary hearing. The record establishes that Defendant appeared with appointed counsel, Edward Bauman, at that time. Mr. Bauman stated that he had intended to subpoena Defendant's original sentencing counsel, Robert Shelton, for the evidentiary hearing but determined the issue could be decided without Mr. Shelton. Mr. Bauman then urged the trial court to find the original sentencing counsel was ineffective for failing to file a motion to reconsider sentence. Mr. Bauman asked the trial court to, in turn, resentence Defendant.

Before addressing Defendant's argument, however, the trial judge noted that Mr. Shelton would likely be considered unavailable for testimony due to hospitalization. The trial court then moved on to the issue before it, stating that the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) must be applied in determining whether counsel was ineffective. As stated in the opinion remanding the matter: "In order to prove an attorney was ineffective, a defendant must show his attorney was deficient, and he was prejudiced by the deficiency." *Farry*, 207 So.3d at 439 (citing *Strickland*, 466 U.S. 668).

Since Mr. Shelton was not present to testify as to why he did not object to the mandatory life sentence or to file a motion to reconsider the life sentence, the trial court stated that it would assume for purposes of determining ineffective assistance of counsel that Mr. Shelton was deficient in failing to object to the sentence and in failing to file a motion to reconsider sentence. Thus, the trial court focused on whether Defendant was prejudiced by that alleged deficiency. Focusing on the nature of the underlying armed robbery,[1] the trial court remarked on what it described as a "calculated violent" offense and one reflecting "a criminal mindset that has no consideration for anybody" but Defendant. The trial court further noted Defendant's "failure to take responsibility for or show any remorse for his crime is just another validation that I - - that I think that sentence under the habitual offender sentence was appropriate." Accordingly, the trial court

---

[1] This court set forth the following facts regarding the armed robbery in the initial opinion:

> In May 2009, William Farry entered James Fodrie's home armed with a baseball bat. He took $15.00, a gun, and a coin bag containing mostly German coins and currency. The Defendant was convicted of armed robbery, a violation of La.R.S. 14:64. The conviction was affirmed in the companion case, [*Farry*, 206 So.3d 1222].

*Farry*, 207 So.3d at 438.

concluded that "it would not have made a difference" if Mr. Shelton had objected to the life sentence or had filed a motion to reconsider sentence.

Subsequent to the hearing, Defendant's appointed counsel filed a motion to reconsider sentence. At the time the trial court convened an additional hearing for consideration of that motion, it explained that Defendant's original sentencing counsel, Mr. Shelton, had passed away since the prior hearing. Questioning whether the motion to reconsider sentence should be considered in light of the earlier determination that the prejudice prong of the *Strickland* standard had not been met, the trial court noted that it had reviewed all of the letters submitted on Defendant's behalf. The trial court then asked Defendant if he would like to put anything additional on the record. Defense counsel noted that Defendant would have liked to have some of his family members present and that Defendant's mother was present. The trial court allowed Defendant's mother to testify.

Afterwards, the trial court reiterated its finding that Defendant failed to prove ineffective assistance of counsel. Additionally, in denying the motion to reconsider sentence, the trial court cited *State v. Lindsey*, 99-3302 (La. 10/17/00), 770 So.2d 339, *cert. denied*, 532 U.S. 1010, 121 S.Ct. 1739 (2001) for the proposition that Defendant had the burden of demonstrating unusual circumstances so as to render the legislatively-prescribed mandatory sentence unconstitutional. The trial court determined that Defendant failed to do so, explaining, in part, that:

> At this point I would say that after considering - - you know, after - - after the evidentiary hearing, after considering everything that was said previously on Mr. Farry's behalf, I can't say - - especially looking at his criminal history and the facts of the current case, I can't say - - and I don't believe that the defense could have met at the time that Mr. Shelton was representing him, had he made the motion, I don't see how he could have made the argument by clear and convincing evidence that Mr. Farry is an exceptional case and that these are unusual circumstances in light of his criminal history, the current charge, et cetera, to be able to prove that he - - you know, that

3

the - - that the mandatory life sentence in this case is constitutionally excessive.

Accordingly, the trial court denied Defendant's motion.

Following that determination, Defendant filed the instant appeal. In briefing to this court, he assigns the following as error:

> I. The trial court's determination that trial counsel was effective in this case was in error.
>
> II. William Farry's appointed counsel to represent him at the evidentiary hearing on remand was ineffective and admittedly unprepared to fully represent William's interest. This matter should again be remanded for a new hearing.
>
> III. William Farry's habitual sentence for life should be vacated and his case remanded for resentencing because his case was (is) not final as of November 1, 2017; thus, under the 2017 amendment to La.R.S. § 15:529.1, Williams is no longer subject to a mandatory life sentence. Denial of relief because of the 2018 change in law would constitute *Ex Post Facto* and Due Process Clause violations.

## LAW AND DISCUSSION

### *Errors Patent*

Pursuant to La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. That review reveals no such errors.

### *Proceedings on Remand*

By his first assignment, Defendant asserts that the trial court erred in finding he was not prejudiced by Mr. Shelton's failure to object to or request reconsideration of the mandatory life sentence. Defendant acknowledges the facts of the case are "bad," but contends Defendant's counsel at the evidentiary hearing should have put on evidence as to the facts surrounding the two predicate convictions for simple burglary. Defendant argues:

> Due to some of the reasons addressed in assignment of error 2 – namely the lack of preparedness on the part of William's counsel at the evidentiary hearings to provide effective representation on the issue of mitigation – and the trial court's own confusion about how to

4

conduct the hearing, the trial court's failure to find prejudice was in error. The facts of this case are admittedly bad. But William was not being punished just for an armed robbery. He was also being punished for two prior simple burglary charges. The court made a point to say simple burglary is much worse than theft, but the record does not indicate the facts surrounding the two prior burglaries. Nowhere was it stated whether the burglaries where of a house versus a vehicle, whether anything was taken versus attempted to be taken, or whether there were occupants versus a vacancy. Because the court did not fully consider everything relevant to William Farry to determine if he was exceptional, it could not properly determine whether there was a mitigation argument trial counsel could have made that would have made a difference. Therefore, the basis of the court's decision was inadequate and its ruling erroneous.

Defendant asks this court to reverse the trial court's ruling and to remand the case for a hearing, at which he be given "the opportunity to fully defend himself and show prejudice existed when his trial counsel failed to object to his sentence."

In response, the State contends the record does not support Defendant's claim that the trial court erred in finding no prejudice. As for Defendant's assertion that the trial court did not fully consider all relevant evidence to determine whether Defendant was an exceptional person to which a downward departure was warranted, the State counters that Defendant fails to specifically identify what that relevant information might be. In concluding its response to this assignment of error, the State argues:

> It is clear that, while the defendant's attorney did not object to the life sentence or file a Motion to Reconsider the sentence, his representation was not ineffective because the deficiency did not prejudice the defense to the extent that the defendant was deprived of a fair trial. The defendant failed to show that he was exceptional or that the legislature's sentence was not meaningfully tailored to the defendant's culpability. In fact, the statements of the trial judge illustrate just the opposite. This defendant is one for which the habitual offender statute was written.

Following review, we conclude that the trial court provided adequate reasons for its determination that Mr. Shelton's failure to request a downward departure from the mandatory life sentence had no bearing on the sentence originally

5

imposed. As the fourth circuit has explained: "[T]he trial judge who imposed the sentence initially is uniquely situated to determine whether any errors by counsel at sentencing would have resulted in a substantially less harsh sentence." *State v. Boyd*, 14-408, p. 7 (La.App. 4 Cir. 2/11/15), 164 So.3d 259, 264.

In ruling, the trial court clearly articulated that, notwithstanding the mitigating evidence presented by Defendant's mother, letters written on Defendant's behalf, and the non-violent nature of the two predicate offenses, it would not have found Defendant to be a candidate for a sentence other than the mandatory life sentence. The trial court instead relied heavily on the facts of the armed robbery, Defendant's criminal record, and Defendant's lack of remorse. The trial court explained that, unlike the cases in which a mandatory life sentence was found to be unconstitutional, the crime being enhanced in Defendant's case is punishable by up to ninety-nine years in prison.

Additionally, and as pointed out by the trial court, in order to prove Defendant was prejudiced by his counsel's failure to request a downward departure, he was required to demonstrate that he would have been one of the exceptional defendants for which a downward departure is appropriate. In *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 676, the supreme court recognized the legislature's "constitutional authority to determine the appropriate penalty for a crime," but the judiciary's respective "authority, in the rare case, to declare a sentence within these statutory limits excessive under the facts of a particular case." Given the "delicate balance" between those respective roles, the supreme court considered "under what rare circumstances a sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Law." *Id.* It explained that the "sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual

6

Offender Law is constitutional[,]" and that a departure from that minimum sentence is only appropriate following a finding "that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." *Id.*

In considering the evidence rebutting the presumption of constitutionality, the supreme court instructed that the "trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes[.]" *Johnson*, 709 So.2d at 676. Rather, while that classification "should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders." *Id.* (citing La.R.S. 15:529.1). In light of that legislative pronouncement, and "while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." *Id.* Rather, to rebut the presumption of constitutional validity, a defendant must clearly and convincingly demonstrate that "[he] 'is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.'" *Id.* (quoting *State v. Young*, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531 (Plotkin, J., concurring), *writ denied*, 95-3010 (La. 3/22/96), 669 So.2d 1223).

Moreover, the supreme court instructed:

[T]he trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the

> Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.
>
> . . . .
>
> We emphasize to sentencing judges that departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.

*Id.* at 677.

Given that standard, we find no merit in Defendant's contention that the trial court's denial of his ineffective assistance of counsel claim was erroneous. Although Defendant suggests that the trial court should have considered the specific facts surrounding the two predicate offenses, there is no indication that further information regarding those offenses would have altered the trial court's opinion. Instead, the trial court's emphasis of the facts of the armed robbery, coupled with its awareness that the two predicates were non-violent, supports its articulated determination.

This assignment lacks merit.

### Ineffective Assistance of Counsel – Evidentiary Hearing on Remand

Turning to his second assignment, Defendant argues that Mr. Bauman, the attorney appointed to represent him at the evidentiary hearing, was ineffective and "unprepared to fully represent [his] interest." In particular, Defendant contends Mr. Bauman "had not prepared with his client to argue for mitigation." Thus, Defendant requests this court to remand for an additional hearing to determine effectiveness of counsel and, in turn, for presentation of mitigation evidence in order to prove his original counsel, Mr. Shelton, was ineffective.

In support of his argument, Defendant notes that Mr. Bauman admitted that the evidentiary hearing held in the present case was his first ineffective assistance of counsel evidentiary hearing. Defendant additionally points out that Mr. Bauman did not talk with or subpoena Mr. Shelton. And third, appellate counsel notes that when the State referred to the facts of the armed robbery for which Defendant was convicted and Defendant attempted to challenge those facts, Mr. Bauman stated:

MR. BAUMAN:

> Well, stop right there. I wasn't here for any of that, Your Honor, so I can't argue that. If we're going to have a hearing as to, you know, he's going to be resentenced and present that evidence at that time to give me a little time to either, one, find out if the PDO is going to appoint somebody or, two, for my checking out the transcripts and the priors and, you know, brushing up on what exactly happened, you know. I'm put at a little bit of a disadvantage here if we're going to have that hearing right now.

Defendant asserts that such statements were admissions by Mr. Bauman that he was ill-prepared to show prejudice by way of putting on mitigation evidence.

As stated above, however, "[i]n order to prove an attorney was ineffective, a defendant must show his attorney was deficient, and he was prejudiced by the deficiency." *Farry*, 207 So.3d at 439 (citing *Strickland*, 104 S.Ct. 2052). Defendant emphasizes that Mr. Bauman failed to present evidence to support a finding by the trial court that Defendant was prejudiced by Mr. Shelton's failure to request a downward departure from the mandatory life sentence. The record reveals, however, that Mr. Bauman did present evidence at the motion to reconsider hearing by questioning Defendant's mother. She explained that Defendant worked with his brother and father in a paint and body shop, that Defendant had not been involved in drugs, that she was shocked when she learned of the simple burglaries, and that she would keep an eye on Defendant if he was

released from jail. Thus, evidence of mitigating factors was, in fact, introduced by Mr. Bauman and considered by the trial court.

Additionally, and related to his first assignment of error as well, Defendant further alleges Mr. Bauman failed to present evidence of facts surrounding the predicate offenses of simple burglary. Defendant fails to establish that those facts would be mitigating, however. He simply argues, instead, that the record fails to show "whether the burglaries were of a house versus a vehicle, whether anything was taken versus attempted to be taken, or whether there were occupants versus a vacancy." In order to prove his counsel acted deficiently, *Strickland* requires a defendant to identify the acts or omissions he alleges were not the result of reasonable judgment. *Strickland*, 466 U.S. 668. Given that standard, and following review of the record, we conclude that Defendant fails to do so.

This assignment lacks merit.

### *Louisiana Revised Statutes 15:529.1*

Finally, Defendant asserts his life sentence should be vacated and his case remanded for resentencing under the November 1, 2017 amendment to the habitual offender sentencing provision. By application of that amended version, Defendant would no longer be subject to a mandatory life sentence. Instead, Defendant's sentence for armed robbery, third habitual offender, would be subject to a minimum term of imprisonment of forty-nine and one-half years and a maximum term of imprisonment of 198 years. *See* La.R.S. 15:529.1(A)(3)(a) (current version).

Chiefly, Defendant contends that he should be resentenced under the November 1, 2017 amendment since his case is still on direct appeal and is not yet final. On this point, both this court, in *State v. Purvis*, 17-1013 (La.App. 3 Cir. 4/18/18), 244 So.3d 496, and the supreme court, in *State v. Williams*, 17-1753 (La.

10

6/15/18), 245 So.3d 1042 (per curiam), have previously found the wording used by the legislature as to the effective date of the November 2017 amendment required its application to any conviction not yet final on November 1, 2017.

Subsequent to the rendition of *Purvis* and *Williams*, however, the legislature amended the habitual offender statute dictating that the habitual offender penalty provision in effect on the date of the offense being enhanced is the penalty provision that must be applied. *See* La.R.S. 15:529.1(K)(1) (providing in pertinent part that: "notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed."). By that legislation, effective August 1, 2018, the habitual offender statute now specifically codifies the long-standing jurisprudential rule that the penalty in effect at the time of the commission of the offense applies. *See, e.g., State v. Parker*, 03-924 (La. 4/14/04), 871 So.2d 317. The armed robbery being enhanced in the present case occurred in May 2009. Corresponding application of the May 2009 version of the habitual offender penalty provision directs the mandatory life sentence imposed in this case. *See* La.R.S. 15:529.1(A)(2)(b)(ii) (2009 version).

Defendant contends, however, that the August 2018 enactment of La.R.S. 15:529.1(K)(1) is inapplicable to his case as it "sought to change the statute's language on retroactivity that is found in the more lenient sentencing laws created in the 2017 amendment." Reference to jurisprudence rendered after the August 1, 2018 effective date reflects that courts have inquired as to whether the 2018 amendment was a substantive amendment to the 2017 legislation and thus applied prospectively only.

In *State v. Washington*, 02-2196, pp. 2-3 (La. 9/13/02), 830 So.2d 288, 290, the supreme court stated the following regarding the prospective or retroactive application of legislation:

> Laws which are procedural or interpretive may apply retroactively, but "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ.Code art. 6; *Aucoin v. State Through Dep't of Transp. and Dev.,* 97–1938, 97–1967, p. 9 (La.4/24/98), 712 So.2d 62, 67.
>
> A two-fold inquiry is required by La. Civ.Code art. 6 in deciding whether a law should be applied retroactively. First, it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends. *Sudwischer v. Estate of Hoffpauir,* 97–0785, p. 8 (La.12/12/97), 705 So.2d 724, 728 (citations omitted). The legislature expressed no such intent with regard to article 676. Therefore, as no such intent was expressed, the second step is to classify the enactment as either substantive, procedural or interpretive. *Id.*
>
>> Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws.
>
> *Jacobs v. City of Bunkie,* 98–2510, p. 8 (La.5/18/99), 737 So.2d 14, 20 (citing *Sudwischer,* 97–0[7]85, p. 9, 705 So.2d at 728). Laws that are procedural or interpretive may be applied retroactively. *Aucoin,* 97–1938, 97–1967, p. 9, 712 So.2d at 67.

As for the 2018 amendment under consideration, the legislature did not express an intent regarding its retroactive or prospective application. The State contends the 2018 amendment did not increase the applicable punishment and should be applied retroactively since it is an interpretive statute passed by the legislature to cure the ambiguity of the effective-date language used in the 2017 amendment. The State cites to a transcript of legislative proceedings. Reference to

12

that legislative history, which is included in the brief alone and is outside of the record, is unnecessary.

Jurisprudential guidance instead reflects a finding that the 2018 amendment is subject to retroactive application. For example, in *State v. Edden*, 52,288, p. 9 (La.App. 2 Cir. 11/14/18), 259 So.3d 1196, 1202, the second circuit stated: "Because the 2018 amendments are procedural and this decision is being decided after August 1, 2018, we find that Edden was sentenced under the proper habitual offender law in effect in 2014, the date of the underlying offense."

Likewise, the second and first circuits have determined that the 2018 amendment abrogated the earlier cases of *Purvis* and *Williams* as relied upon by Defendant. *See State v. Cagler*, 18-427 (La.App. 1 Cir. 11/7/18) (unpublished opinion).[2] *See also State v. Floyd*, 52,183 (La.App. 2 Cir. 8/15/18), 254 So.3d 38. Consequently, those circuits have applied the habitual offender penalty provision in effect when the offense was committed. The second circuit explained its position on this issue as follows:

> This court is sensitive to the reality that Floyd will not benefit from the leniency of the 2017 amendment because his offense occurred before it took effect. However, the legislature specified that the amendment would have "prospective application only," and a subsequent amendment further clarified that courts "shall apply the

[2]*See* 2018 WL 5876878. The first circuit explained:

La. R.S. 15:529.1 was amended in 2017, in pertinent part, to no longer allow consideration of "any other crimes punishable by imprisonment for twelve years or more." See La. Acts, No. 257, § 1 & 2017 La Acts, No. 282, § 1. In enacting the amendments, the Legislature provided: "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." 2017 La. Acts, No. 257, § 2 & 2017 La. Acts, No. 282, § 2. We are aware of **State v. Williams,** 2017-1753 (La. 6/15/18), 245 So.3d 1042 (per curiam) and **State v. Purvis,** 2017-1013 (La. App. 3rd Cir. 4/18/18), 244 So.3d 496, which gave limited retroactive application to the 2017 amendments. However, we consider those decisions effectively abrogated by the 2018 enactment of La. R.S. 15:529.1(K)(1). See **State v. Floyd,** 52,183, p. 7 (La. App. 2nd Cir. 8/15/18), 254 So.3d 38.

*Cagler*, 18-427, p. 14 n. 6.

provisions of this Section that were in effect on the date that the defendant's instant offense was committed." In other words, the legislature clearly stated its intent to diminish the penalties for certain habitual offenders, but equally clearly stated its intent not to reopen or relitigate cases that arose before the effective date. The jurisprudence also holds that the version of the habitual offender law in effect at the time of the crime is the version that applies; amended provisions apply only to offenses committed after their effective dates. *State v. Parker*, [03-924 (La. 4/14/04), 871 So.2d 317]; *State v. Casaday*, [51,947 (La.App. 2 Cir. 4/11/18), 247 So.3d 1057]; *State v. Barker* [17-469 (La.App. 4 Cir. 5/30/18), __ So.3d __]. We therefore cannot adopt Floyd's premise of using the 2017 amendment as a convenient metric to find his sentence excessive.

*Floyd*, 254 So.3d at 43 (footnote omitted). By footnote, the second circuit specifically declined to follow *Purvis*, "consider[ing] it effectively abrogated by the 2018 enactment of R.S. 15:529.1K(1)." *Id.* at 43 n.2.

Significantly, a panel of this court has recently noted that developing line of jurisprudence in this circuit's first consideration of whether La.R.S. 15:529.1(K) applies retroactively. *See State v. Bias*, 18-665 (La.App. 3 Cir. 2/6/19), __ So.3d __.[3] Referencing both *Edden* and *Cagler*, the panel explained that: "We agree with the first and second circuits and find La.R.S. 15:529.1(K) applies retroactively to this case." *Id.* at __. The panel thus applied the sentencing range in effect at the time of the commission of the offense under consideration.

Following independent review, as well as consideration of the above jurisprudence, we too conclude that the 2018 amendment is interpretive in nature given its enactment after *Williams* and its specific directive for application of the law in effect at the time of the commission of the instant offense. Accordingly, Defendant's sentence stems from the penalty in effect when he committed the armed robbery – life imprisonment.

**Constitutional Arguments**

---

[3] *See* 2019 WL 457320.

14

We next turn to Defendant's related contention that two constitutional considerations undermine the retroactive application of the 2018 legislation. First, Defendant argues the application of the 2018 legislation to his case would be a violation of his right against *ex post facto* application of laws. He suggests that if the 2018 amendment applies to his case, he will "be stripped of a right – that existed starting November 1, 2017 – to argue for a sentence other than his natural life in jail."

However, in *State v. Holloway*, 15-1233, p. 7 (La. 10/19/16), 217 So.3d 343, 348, the supreme court explained the following regarding the definition of an *ex post facto* law:

> A law which "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed" survives an ex post facto analysis. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). This court similarly observed that the linchpin inquiry in determining whether a statute violates the state Ex Post Facto Clause is "whether the change alters the definition of criminal conduct or increases the penalty." *State ex rel. Olivieri v. State*, 00–0172, p. 15 (La. 2/21/01), 779 So.2d 735, 744.

*See also State v. Robinson*, 423 So.2d 1053, 1063 (La.1982)(explaining that the prohibition on *ex post facto* laws, "extends to the enforcement of any enactment which changes the punishment to inflict a greater penalty for the crime than that authorized for the crime at the time of its commission."); *State v. Vail*, 17-354 (La.App. 3 Cir. 12/28/17), 236 So.3d 644, *writ denied*, 18-202 (La. 11/20/18), 256 So.3d 998, *cert. denied*, _ U.S. _, _ S.Ct. _ (2019).[4]

Accordingly, application of the 2018 amendment to this case is not an *ex post facto* application as it does not increase the penalty to which Defendant could be punished *at the time he committed his offense*. In contrast, Defendant received

---

[4] *See* 2019 WL 235046.

15

the mandatory life sentence that was required at the time he committed his offense in May 2009.

Neither do we find merit in Defendant's contention that his due process rights were violated by procedural delays that caused his appeal to be lodged after the 2018 amendment became effective. These delays, Defendant claims, prevented him from being able to seek resentencing under the 2017 amendment prior to the August 1, 2018 effective date of the 2018 amendment. Defendant thus argues that his constitutional right to due process mandates that he be resentenced under the 2017 amendment.

Defendant's argument, however, assumes that he had a right to the application of the 2017 ameliorative changes. Our above determination regarding the retroactive application of the 2018 amendment negates Defendant's assumption. Further, it is well-settled that a criminal defendant does not have a constitutional or statutory right to an illegal sentence. *See State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790. Thus, even if Defendant's case proceeded without any of the delays of which he complains, and Defendant was resentenced under the 2017 amendment as formerly required by *Purvis* and *Williams*, the sentence would have been illegally lenient in light of the retroactive application of the 2018 amendment.

Accordingly, we find that this argument lacks merit. By decree below, we maintain Defendant's sentence.

## CONCLUSION

For the foregoing reasons, Defendant's sentence is affirmed.

**AFFIRMED.**