MARION F. EDWARDS, Chief Judge.
 

 | ¡¡In this criminal matter the defendant/appellant, David J. Stewart (“Stewart”), appeals his adjudication as a multiple offender and his resulting sentence. We affirm.
 

 Stewart was charged in a bill of information with first degree robbery in violation of La. R.S. 14:64.1, to which he entered a plea of not guilty. Stewart proceeded to a jury trial that resulted in a conviction on the charge. Subsequently, the trial court sentenced Stewart to imprisonment at hard labor for twenty-five years without benefit of parole, probation, or suspension of sentence. This Court affirmed Stewart’s conviction and sentence on May 26, 2009.
 
 [1]
 

 After the appeal was taken, the State filed a multiple bill asserting that Stewart was a fourth felony offender. Stewart denied those allegations. The State orally amended the multiple bill to allege that Stewart was a third felony offender. On June 12, 2009, a multiple bill hearing was held, after which the trial court found Stewart to be a third felony offender. Subsequently, the trial court |.^sentenced Stewart under the multiple bill statute to life imprisonment without benefit of parole, probation, or suspension of sentence.
 

 On August 21, 2009, Stewart filed a motion for appeal that was denied as untimely on September 1, 2009. In his order denying the motion, the trial judge advised Stewart to file an application for post-conviction relief (APCR) seeking an out-of-
 
 *774
 
 time appeal. Although there is no indication in the record that Stewart filed an application seeking that relief, on December 2, 2009, the trial judge granted Stewart an out-of-time appeal. The order granting the appeal, in pertinent part, provides: “Considering the above and foregoing, it is ordered that the Defendant, David Stewart, be granted an appeal[.]” Thus, it appears that Stewart filed an APCR that for some reason is not in the record.
 

 Normally, an apparently untimely appeal would be dismissed to allow a defendant to properly seek reinstatement of appeal rights by an APCR. However, under the circumstances of the matter before us, we will consider the merits of the appeal. We find that, because the State did not object to any procedural irregularities in the ordering of the out-of-time appeal, and the trial court granted the appeal appointing the Louisiana Appellate Project, a dismissal of this appeal to allow Stewart time to properly seek reinstatement of appeal rights would only prolong the delay without serving any useful purpose. As such, we find this appeal is properly before this Court.
 
 [2]
 

 FACTS
 

 The facts of the underlying conviction on the charge of first degree robbery involve the robbery of the Tastee Donuts on the corner of Transcontinental Drive | 4and West Esplanade Avenue in Metairie and were fully set forth in our previous opinion.
 
 [3]
 

 APPELLATE COUNSEL’S BRIEF
 

 Under the procedure set forth in
 
 State v. Benjamin
 

 [4]
 

 appointed appellate counsel has filed a brief pursuant to
 
 Anders v.
 
 California,
 
 [5]
 
 asserting that she has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal and has filed a request to withdraw as counsel of record.
 

 In
 
 Anders,
 
 the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he/she finds his case to be wholly frivolous after a conscientious examination of it.
 
 [6]
 
 The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal so as to provide the reviewing court with a basis for determining whether appointed counsel has fully performed his/ her duty to support their clients’ appeals to the best of their ability and to assist the reviewing court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.
 
 [7]
 

 The Louisiana Supreme Court stated that an
 
 Anders
 
 brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objec
 
 *775
 
 tions lack merit. The supreme court explained that an
 
 Anders
 
 brief must demonstrate by full discussion and analysis that appellate counsel has cast an advocate’s eye over the trial record and | ¿considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.
 
 [8]
 

 When conducting a review for compliance with
 
 Anders,
 
 an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous.
 
 [9]
 
 If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellant counsel.
 
 [10]
 

 Stewart’s appellate counsel noted that the documents presented were certified copies of arrest and conviction records of Stewart’s two prior convictions, with pertinent dates, which showed that all of the convictions and arrests had fingerprints which matched those of Stewart. She also noted that there were less than ten years between the expiration of the maximum sentence for each previous felony conviction and the commission of each subsequent felony. Thus, appellate counsel concluded that the issue of the sufficiency of the evidence did not present an arguable issue for appeal.
 

 Appellate counsel pointed out that the defense objected to the use of one of the prior convictions because the social security number on the arrest card was one number off from the social security number on the certified copy of the conviction. Nevertheless, she noted that the trial judge overruled that objection, finding that all lñother identifiers for that arrest and conviction matched. As such, appellate counsel maintained that that objection did not present an arguable issue for appeal. Finally, she stated that, because the underlying offense, first degree robbery, was a crime of violence under La. R.S. 14:2(B), and the two previous felonies were a direct state violation and an equivalent felony violation of the Uniform Controlled Dangerous Substances Law, a life sentence without benefit of parole, probation, or suspension of sentence was mandated by the multiple offender statute.
 

 In her letter, which is attached to her motion to withdraw, appellate counsel notified Stewart that, after a thorough review of the record in his case, she did not find any appealable issues. Additionally, this Court sent Stewart a letter by certified mail informing him that an
 
 Anders
 
 brief had been filed and that he had until July 10, 2010, to file a
 
 pro se
 
 supplemental brief.
 

 PRO SE BRIEF
 

 Stewart subsequently filed a supplemental brief presenting sixteen arguments which constitute two assignments of error for our review. Most of the arguments relate to Stewart’s assertion that his motion to recuse the trial judge and vacate his sentence should have been granted. Stewart also argues that there was insufficient evidence presented by the State to
 
 *776
 
 support the finding that he is a third felony offender.
 

 Stewart argues that Judge Lee Faulkner erred by denying his Motion to Recuse Judge Donald Rowan and his Motion to Vacate the Sentence. Stewart contends that Judge Rowan should have recused himself from the multiple bill hearing due to an appearance of impropriety and a conflict of interest, because Judge Rowan worked at the Jefferson Parish District Attorney’s Office at the time the offense was committed on January 3, 2007. Stewart further contends that |7Judge Rowan should not have presided over the multiple bill hearing because a stay was pending.
 

 In support of his argument, Stewart cites La.C.Cr.P. arts. 671(4) and 674. Stewart argues that Judge Rowan was unable to perform his judicial duties without being biased, impartial, and prejudiced on the basis that Judge Rowan was employed with the district attorney’s office at the time the crime was committed. Stewart further argues that, because Judge Rowan presided over his trial in violation of the recusal statute and presided over his case, this oversight should allow Stewart to have his sentence vacated to rectify the error.
 

 La.C.Cr.P. art. 671 sets forth the grounds upon which a judge may be re-cused in a criminal case. The pertinent subparts of that article provide:
 

 A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
 

 (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
 

 [[Image here]]
 

 (3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter’s employment in the cause;
 

 [[Image here]]
 

 (6) Would be unable, for any other reason, to conduct a fair and impartial trial.
 

 La.C.Cr.P. art. 674 provides the procedure for recusation of the trial judge:
 

 A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.
 

 |SA trial judge is presumed to be impartial, and the burden is on the party seeking to recuse a judge to prove otherwise.
 
 [11]
 
 The grounds for recusal based on bias or prejudice must amount to more than conelusory allegations.
 
 [12]
 
 The Louisiana Supreme Court does not require the disqualification of a judge solely on the basis of his or her coincidental employment in the district attorney’s office at the time the defendant was charged in a case over which the judge had no supervision or control before assuming the bench.
 
 [13]
 
 Fur
 
 *777
 
 ther, the Louisiana Supreme Court has declined to treat assistant district attorneys within the same office as an “association” of lawyers within a law firm for purposes of La.C.Cr.P. art. 671 A(S).
 
 [14]
 

 At the recusal hearing, Judge Rowan testified that he was employed by the district attorney’s office on January 29, 2007. He explained that, when he left the district attorney’s office on July 13, 2007 to run for judge, he did not know what was occurring there while he was gone. Judge Rowan farther testified that he was on leave from the district attorney’s office on October 23 through October 25, 2007, and he was not getting paid during that time. Judge Rowan maintained that he did not participate in any way in the arrest of Stewart or in the investigation of this case. Judge Rowan asserted that he did not participate in any way with the prosecution of this case. He indicated that he did not have any bias toward Stewart or any prejudice against him, and he testified that he could be fair in his sentencing and in the multiple bill hearing. Judge Rowan also testified that he did not preside over the original trial and that he had to read the transcript of the trial to hear the motion for new trial.
 

 | (After hearing the testimony of Judge Rowan and ascertaining that neither the State nor Stewart had any argument, Judge Faulkner denied the Motion to Re-cuse and the Motion to Vacate Sentence without providing reasons. Stewart moved for a stay to allow him time to seek review of the ruling by this Court. Judge Faulkner allowed Stewart to file pleadings to this Court to review the rulings, but he denied Stewart’s request for a stay.
 

 No application for writs of review was filed in this Court. Nevertheless, approximately two-and-one-half months later, on June 12, 2009, when Judge Rowan presided over Stewart’s multiple bill hearing, Stewart objected to the proceedings, asserting that his case was still in the Fifth Circuit. Judge Rowan said he had not been stayed and went forward with the hearing. Defense counsel noted his objection to the judge’s ruling. The multiple bill hearing was subsequently held, after which Judge Rowan found Stewart to be a third felony offender. Judge Rowan then sentenced Stewart to life imprisonment.
 

 Given the applicable law and the facts in this case, we find no merit in Stewart’s argument that his motion to recuse and vacate the sentence was improperly denied. Further, there is no indication that Stewart filed a writ of review in this Court or requested a stay order. Given Judge Rowan’s disclaimer of any actual prejudice against either the State or Stewart, and the fact that Judge Rowan did not have any direct or supervisory role as an assistant district attorney in the prosecution of relator, recusal is not required by law.
 

 Stewart also challenges the sufficiency of evidence presented by the State to show that he is a multiple offender.
 

 The record shows that the State filed a multiple bill alleging Stewart to be a fourth felony offender. However, on June 12, 2009, just before the multiple bill | ^hearing, the State amended the multiple bill to allege that Stewart was a third felony offender, rather than a fourth felony offender.
 

 In the amended multiple bill, the State alleged that, on October 25, 2007, Stewart was convicted of first degree robbery in violation of La. R.S. 14:64.1 (the underlying conviction). The State also alleged that Stewart had two predicate convictions: (1) on October 21, 2002, Stewart
 
 *778
 
 pled guilty to possession with intent to distribute cocaine in violation of La. R.S. 40:967(B)(1) in case number 418-715 in Orleans Parish and was sentenced on that same date to serve five years at hard labor in the Department of Corrections; and (2) Stewart pled guilty to distribution of cocaine under Title 21.841B1C-NAS in case number 89-CR00519 in the U.S. Eastern District Court and was sentenced on March 21, 1990 to twenty-four months in the Bureau of Prisons with sixty months released supervision.
 

 To prove a defendant is an habitual offender, the State must initially prove the prior felony convictions and that defendant is the same person who was convicted of the prior felonies.
 
 [15]
 
 When the State relies on a prior conviction that is based on a guilty plea in proving defendant’s multiple offender status, and defendant denies the multiple bill’s allegations, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken.
 
 [16]
 

 After the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity. If defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary.
 
 [17]
 
 This final burden can be met if the State produces a “perfect transcript” articulating | nthe
 
 Boy-kin
 

 [18]
 

 colloquy between the defendant and the trial judge or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript.
 
 [19]
 
 If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.
 
 [20]
 

 Stewart maintains that the fingerprint card with an arrest date of November 4, 2000, did not sufficiently link him with the conviction from Orleans Parish Criminal Court, Division “I.” Stewart further argues that the fingerprint card does not have an item number to coincide with the conviction used in the multiple bill. He also asserts that the fingerprint card is for an arrest for possession of cocaine and not an amended charge of possession with intent to distribute cocaine. Stewart notes that the fingerprint card does not contain his correct social security number.
 

 Stewart further argues that the evidence was insufficient to prove he was a multiple offender because the State’s expert testified that there was no name in State’s Exhibit 5, a certified “pen-pack” from the Department of Corrections,
 
 [21]
 
 to show that
 
 *779
 
 it contained his fingerprints. He contends that no conviction was attached to the pen-pack and, therefore, there was no proof that the fingerprints on the card in the pen-pack were his. Stewart points out that the pen-pack contained other convictions not used at the multiple bill hearing. He asserts that there was | ^nothing on the fingerprint card in State’s Exhibit 5 to link his fingerprints to State’s Exhibit 2.
 

 At the multiple bill hearing, Aischa Prudhomme, a latent fingerprint expert, testified that she compared Stewart’s fingerprints from State’s Exhibit 2 (the fingerprint card obtained from Stewart that day) to the fingerprints from State’s Exhibit 3 (a certified copy of a fingerprint card from the New Orleans Police Department Custodian of Records with a date of arrest of November 4, 2000) and determined that they matched. The State also introduced into evidence State’s Exhibit 4, the certified conviction from New Orleans, which contained the bill of information pertaining to the arrest of Stewart on November 4, 2000; the guilty plea form; the docket master; the October 21, 2002 minute entry; and the arrest register.
 

 Ms. Prudhomme compared Stewart’s fingerprints from State’s Exhibit 2 to the fingerprints from State’s Exhibit 5 (the pen pack) and determined that they matched. She noted that the page containing the fingerprints in State’s Exhibit 5 did not have Stewart’s name on it but that page was attached to the pen-pack. She then compared Stewart’s fingerprints from State’s Exhibit 3 to those in State’s Exhibit 5 and found that they matched. Ms. Prudhomme explained that Stewart had a distinctive fingerprint, in that he had a predominant scar located on his right index finger. She testified that she noticed that distinction in State’s Exhibits 2, 3, and 5. Ms. Prudhomme further testified that her findings that the fingerprints in State’s Exhibit 2 matched those in State’s Exhibits 3 and 5 were verified by Chad Pitfield, who was also a latent print examiner.
 

 With respect to the federal conviction used as a predicate offense, Stewart argues that the federal probation officer’s identification of him in court was unduly suggestive because no one else was in the courtroom and because the probation | lsofficer had not seen him in over sixteen years. Therefore, Stewart argues that the identification should have been suppressed. Stewart also argues that, at the very least, he would be a second felony offender and not a third felony offender and, therefore, not eligible to receive a life sentence, because the federal conviction was not punishable by ten years or more as required by the multiple bill statute.
 

 After Ms. Prudhomme completed her testimony, the State called Christy Waters as a witness. Ms. Waters testified that she was employed by the U.S. Probation Office in the Eastern District of Louisiana, and she was Stewart’s probation officer in case number 89-519. She identified Stewart in court, as she had an independent recollection of him. Ms. Waters testified that Stewart was convicted of distribution of cocaine and was sentenced on March 21,
 
 *780
 
 1990, to twenty-four months in the Bureau of Prisons followed by a five-year term of supervised release. She explained that Stewart’s parole was revoked on April 24, 1996, and Stewart received a seven-month sentence. Ms. Waters reviewed Stewart’s federal conviction packet (State’s Exhibit 6)
 
 [22]
 
 and testified that the person she supervised was Stewart. She asserted that Stewart’s date of birth was January 9, 1964, and she confirmed his social security number.
 

 Following the testimony of Ms. Waters, defense counsel argued that the evidence was insufficient to prove Stewart was a third felony offender. He contended that the State did not properly link State’s Exhibit 3 (the fingerprint card with an arrest date of November 4, 2000) to the New Orleans conviction (State’s Exhibit 4), because there was no item number or corresponding charge on State’s Exhibit 3 and because State’s Exhibit 3 had a different social security number than |14the one found in State’s Exhibit 5. Defense counsel also moved to suppress the identification made by the federal probation officer due to the unduly suggestive atmosphere, given that Stewart was the only individual present, and it had been fourteen years since that officer had likely last seen Stewart.
 

 The prosecutor responded that, even though the social security number was one number off, the date of arrest was the same. She argued the expert testified that the fingerprints from State’s Exhibits 2, 3, and 5 all matched, and defense counsel had stipulated to the witness’ expertise. The prosecutor also stated that she was not required to present other “David Stew-arts” for the identification procedure.
 

 After hearing arguments of counsel, the trial judge reviewed the documents and found Stewart to be a third felony offender based on State’s Exhibits 1 through 6. He noted that State’s Exhibit 3, the certified arrest register, was listed in State’s Exhibit 5, the pen-pack. The trial judge also noted that the same “A.F.I.S. Attention to number” was found in both State’s Exhibit 3 and State’s Exhibit 5. He concluded that the third felony, first degree robbery, was a crime of violence, and the two predicate convictions were violations of the Uniform Controlled Dangerous Substances law punishable by imprisonment for ten years or more. As such, the trial judge sentenced Stewart to the mandatory sentence of life imprisonment "without benefit of parole, probation, or suspension of sentence.
 

 Defense counsel noted his objection to the life sentence. He also stated that the trial judge had brought up an interesting point at the bench, namely, that there was no proof before the court that the federal charge had a penalty of more than ten years in prison. Defense counsel said he should have objected earlier and that the State had to prove that the range of sentence was ten years. Based on that argument, he said he would ask the trial judge to reconsider the sentence, or he could move for a new trial.
 

 11sThe State responded that, as they had discussed at the bench, State law would apply. The trial judge agreed, noting that the State law for the federal conviction carried with it a two to thirty-year penalty,
 
 *781
 
 with the first two years to be served without benefit of parole, probation, or suspension of sentence. The trial judge told defense counsel he would allow him to file a motion to reconsider the ruling, but the trial judge said he did not believe he was wrong.
 

 In the instant case, Stewart’s identity was established at the multiple bill hearing by a fingerprint expert with respect to the prior conviction from Orleans Parish. Additionally, State’s Exhibit 3 was also linked to State’s Exhibit 5, the pen-pack, by the “APIS ATN” number, among other things, as noted by the trial judge.
 

 This Court has held that testimony comparing a defendant’s current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant is the person convicted of a prior felony.
 
 [23]
 
 This Court has also found sufficient linkage where the State connects the fingerprint card to the arrest register and/or the bill of information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers.
 
 [24]
 

 With respect to the federal conviction, Stewart’s identity was established at the multiple bill hearing by his former probation officer, who testified that Stewart was the person who was convicted of distribution of cocaine and sentenced on March 21, 1990. Additionally, the State’s exhibits show that Stewart was represented by counsel at both prior pleas.
 

 l1fiStewart then had the burden to prove by affirmative evidence an infringement of his rights or of a procedural irregularity. At the multiple bill hearing and on appeal, Stewart argued that the evidence was insufficient to prove that he was a third felony offender because the State did not sufficiently link his current fingerprints to the prior Orleans Parish conviction. We disagree for reasons noted by the trial judge.
 

 Stewart also argued at the hearing and on appeal that the evidence was insufficient to support the sentence of mandatory life in prison because there was no proof at the hearing that the prior conviction for distribution of cocaine in federal court was punishable by imprisonment for ten years or more.
 

 La. R.S. 15:529.1 provides that, if the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B),
 
 [25]
 
 a sex offense as defined in La. R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
 
 [26]
 

 In the matter before us, Stewart’s underlying conviction was for first degree
 
 *782
 
 robbery, which is defined as a crime of violence under La. R.S. 14:2(B)(22). The prior conviction from Orleans Parish, possession with intent to distribute cocaine, is currently punishable by imprisonment for two to thirty years.
 
 [27]
 
 La. R.S. 40:967(B)(4)(b). Stewart is correct in that there was no evidence at the hearing as |17to the penalty for his prior federal conviction for distribution of cocaine. However, the analogous conduct under Louisiana law, distribution of cocaine, would constitute a felony punishable by a sentence of ten years or more. La. R.S. 40:967(B)(4)(b). That statute requires Louisiana courts to determine the analogous state crime according to the nature of the act involved, not the penalty provided for the offense in the foreign jurisdiction.
 
 [28]
 

 Since Stewart’s third felony was a crime of violence, and the two prior felonies were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, we find the trial judge did not error in sentencing Stewart to life imprisonment as a third felony offender.
 

 Finally, Stewart argued at the multiple bill hearing and on appeal that the federal conviction should not have been used as a predicate because the federal probation officer’s identification of him in court was unduly suggestive as no one else was in the courtroom and the probation officer had not seen him in a long time. Stewart contended that the identification should have been suppressed.
 

 However, Judge Rowan listened to the testimony and obviously found the federal probation officer’s identification of Stewart to be credible. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of witnesses will not be reweighed on appeal.
 
 [29]
 

 In light of the foregoing, we find that Stewart failed to present affirmative evidence of any infringement on his rights or of a procedural irregularity and, therefore, the burden never shifted to the State to prove the constitutionality of the predicate pleas. Consequently, the trial court did not err in adjudicating Stewart a h «third felony offender and sentencing him to life imprisonment without benefit of parole, probation, or suspension of sentence.
 

 An independent review of the record and our discussion of the
 
 pro se
 
 assignments of error support appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal.
 

 Although appellate counsel did not discuss in depth the issues raised by Stewart’s counsel at the multiple bill hearing or the issues raised in Stewart’s
 
 pro se
 
 assignment of error number two, we still find that appellate counsel’s brief adequately demonstrates that she has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal, and an independent review of the record supports counsel’s assertion. Therefore, appellate counsel’s motion to withdraw as attorney of record is hereby granted.
 

 ERRORS PATENT
 

 Stewart requests an error patent review of the multiple offender proceeding.
 
 *783
 
 We have conducted a review of the record for errors patent and find several. First, we note that the multiple bill contains a typographical error in that it references the incorrect statute number for first degree robbery (14:65.1 instead of 14:64.1). However, there is no indication that Stewart was prejudiced by the error since the multiple bill contained the correct case number, section of court, name of offense, and date of Stewart’s underlying conviction. Thus, we find that the error in the statutory citation of the underlying conviction was harmless.
 

 We also note that the record does not reflect Stewart was advised of his rights prior to the multiple bill hearing. La. R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the information, his right to a | shearing, and his right to remain silent.
 
 [30]
 
 The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when, as here, the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.
 
 [31]
 
 Although Stewart did not remain silent at the hearing, he did not say anything prejudicial to his case. Therefore, we find that the trial court’s failure to advise Stewart of the specific allegations against him and of his right to be tried and to remain silent was harmless error.
 

 Of greater concern is the fact that the transcript does not indicate that the trial judge vacated the original sentence prior to sentencing Stewart under the multiple offender statute. However, the commitment shows that the trial judge vacated the original sentence.
 

 The Louisiana Supreme Court found that an enhanced sentence in such circumstances was valid:
 

 To the extent that the ... commitment/minute entry reflects that the trial judge vacated the defendant’s original sentence and thereby eliminated any possible confusion as to the terms of the defendant’s confinement, the failure of the transcript to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant.
 
 [32]
 

 Accordingly, this issue requires no corrective action.
 

 Upon further review of the commitment, we find that it indicates that Stewart was sentenced to “imprisonment at hard labor for a term of life in prison.” However, the transcript shows the trial judge failed to specify that the life sentence was to be served at “hard labor.” The transcript prevails.
 
 [33]
 

 | 2qA court must impose a determinate sentence.
 
 [34]
 
 If there was some discretion allowed by the applicable sentencing statute, the failure to indicate whether the sentence was to be served at “hard labor” would be an impermissible indeterminate sentence.
 
 [35]
 
 Because the underlying statute, La. R.S. 14:64.1, required the sentence be served at hard labor allowing
 
 *784
 
 no discretion to the trial judge, the error was harmless and the sentence was not an impermissible indeterminate sentence.
 

 Additionally, it is noted that the Louisiana Legislature amended La. R.S. 15:529.1(G) in the 2010 Regular Session (Act No. 69), effective date, August 15, 2010, to provide that any sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence. Therefore, none of the errors patent found on review require correction.
 

 For reasons set forth in this opinion, we affirm Stewart’s conviction and sentence and grant defense counsel’s motion to withdraw.
 

 AFFIRMED; MOTION TO WITHDRAW GRANTED
 

 [1]
 

 .
 
 State v. Stewart,
 
 08-1265 (La.App. 5 Cir. 5/26/09), 15 So.3d 276,
 
 writ denied,
 
 09-1407 (La.3/5/10), 28 So.3d 1003.
 

 [2]
 

 .
 
 See, State v. Babineaux,
 
 08-705 (La.App. 5 Cir. 1/13/09), 8 So.3d 621.
 

 [3]
 

 .
 
 State v. Stewart,
 
 15 So.3d at 278-80.
 

 [4]
 

 . 573 So.2d 528, 530 (La.App. 4 Cir. 1990). The procedure set forth in
 
 Benjamin
 
 for compliance with
 
 Anders
 
 was sanctioned by the Louisiana Supreme Court in
 
 State v. Mouton,
 
 95-0981 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam), and adopted by this Court in
 
 State v. Bradford,
 
 95-929 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.
 

 [5]
 

 . 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and
 
 State v. Jyles,
 
 96-2669 (La. 12/12/97), 704 So.2d 241, 242 (per curiam).
 

 [6]
 

 . The United States Supreme Court reaffirmed its position in
 
 Anders
 
 in
 
 Smith v. Robbins,
 
 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).
 

 [7]
 

 .
 
 McCoy v. Court of Appeals of Wisconsin, Dist. 1,
 
 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
 

 [8]
 

 .
 
 State v. Jyles,
 
 704 So.2d at 241.
 

 [9]
 

 .
 
 State v. Bradford,
 
 95-929 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.
 

 [10]
 

 .Id.
 

 [11]
 

 .State v. Strickland,
 
 04-843 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 893,
 
 writ denied,
 
 05-820 (La.6/17/05), 904 So.2d 683.
 

 [12]
 

 .State v. Galliano,
 
 05-962 (La.App. 5 Cir. 8/29/06), 945 So.2d 701, 727-28,
 
 writ denied,
 
 06-2367 (La.4/27/07), 955 So.2d 682.
 

 [13]
 

 .State v. Connolly,
 
 06-540 (La.6/2/06), 930 So.2d 951, 954.
 

 [14]
 

 .
 
 Id.
 

 [15]
 

 .
 
 State v. Mims,
 
 00-1507 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766,
 
 writ denied,
 
 02-0466 (La.2/7/03), 836 So.2d 88.
 

 [16]
 

 .
 
 State
 
 v.
 
 Shelton,
 
 621 So.2d 769, 779-80 (La. 1993).
 

 [17]
 

 .
 
 Id.
 
 at 779.
 

 [18]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The three core rights enumerated in
 
 Boykin
 
 are "(1) right to trial by jury, (2) defendant’s privilege against self-incrimination, and (3) his right to confront his accusers.”
 
 State v. Robinson,
 
 02-1253 (La.App. 5 Cir. 4/8/03), 846 So.2d 76, 85,
 
 writ denied,
 
 03-1361 (La. 11/26/03), 860 So.2d 1131.
 

 [19]
 

 .
 
 State v. Collins,
 
 04-255 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1154,
 
 writ denied,
 
 04-2798 (La.3/11/05), 896 So.2d 62.
 

 [20]
 

 .
 
 Id.
 

 [21]
 

 . The "pen-pack” contained the records of the Louisiana Department of Public Safety and Corrections regarding defendant, which included the master record; time computation and jail credits; release date computa
 
 *779
 
 tion information; conduct report; good time; the bill of information for the underlying conviction; the multiple bill in the instant case; an August 15, 2008 minute entry for the underlying offense; criminal history from all jurisdictions; psychology department report; risk need assessment; two fingerprint cards; offender description sheet; rap sheet; transfer record; diminution of sentence; bill of information pertaining to offenses committed on December 29, 2001; a May 22, 2003 minute entry; a bill of information pertaining to the November 4, 2000 arrest for possession of cocaine; an October 21, 2002 minute entry; and an amended October 21, 2002 minute entry.
 

 [22]
 

 . State's Exhibit 6 contained a federal court complaint alleging that, on October 5, 1989, Stewart distributed cocaine; a two-count indictment pertaining to Stewart; a January 26, 1990 letter from the U.S. Attorney to Judge Robert Collins; Statement of Reasons for Imposing Sentence; a January 10, 1991 judgment; an April 24, 1996 judgment and order revoking supervised release; a March 21, 1990 transcript; and a January 26, 1990 transcript.
 

 [23]
 

 .
 
 State v. Bell,
 
 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926,
 
 writ denied,
 
 98-0792 (La.9/16/98), 721 So.2d 477.
 

 [24]
 

 .
 
 State v. Muhammad,
 
 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 33,
 
 writ denied,
 
 04-2082 (La. 1/7/05), 891 So.2d 669.
 

 [25]
 

 . It is noted that La. R.S. 14:2 was amended by the Louisiana Legislature in the 2010 Regular Session; however, those amendments do not change the analysis herein.
 

 [26]
 

 .It is noted that La. R.S. 15:529.1 was amended by the Louisiana Legislature in the 2010 Regular Session; however, those amendments do not change the analysis herein.
 

 [27]
 

 . It is noted that, in November of 2000, when the offense was committed, the punishment was imprisonment for five to thirty years.
 

 [28]
 

 .
 
 See, State v. Carouthers,
 
 618 So.2d 880, 882 (La. 1993).
 

 [29]
 

 .State v. Macon,
 
 06-481 (La.6/1/07), 957 So.2d 1280, 1285-86;
 
 State v. Rowan,
 
 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
 

 [30]
 

 .
 
 State v. Haywood,
 
 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 582.
 

 [31]
 

 .
 
 Id.
 
 at 582-83.
 

 [32]
 

 .
 
 State v. Mayer,
 
 99-3124 (La.3/31/00), 760 So.2d 309 (per curiam).
 
 See also, State v. Simmons,
 
 02-960 (La.App. 5 Cir. 1/28/03), 839 So.2d 239, 245,
 
 writ denied,
 
 03-841 (La. 10/31/03), 857 So.2d 473.
 

 [33]
 

 .
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La. 1983).
 

 [34]
 

 . La.C.Cr.P. art. 879.
 

 [35]
 

 .
 
 State v. Norman,
 
 05-794 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661,
 
 writ denied,
 
 06-1366 (La. 1/12/07), 948 So.2d 145.