GRAVOIS, J.
*933 Defendant, Henri Pierre Lyles, was convicted of aggravated battery. He was adjudicated a third felony offender and was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. He now appeals his sentence, arguing that he should have been sentenced as a second felony offender under the 2017 changes to La. R.S. 15:529.1, and, in the alternative, that his sentence is excessive. For the reasons that follow, we affirm defendant's habitual offender sentence and remand the matter for correction of the sentencing minute entry and the Uniform Commitment Order as set forth herein.
PROCEDURAL HISTORY
On March 13, 2015, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Henri Pierre Lyles, with aggravated battery in violation of La. R.S. 14:34. After a jury trial on November 15-16, 2016, defendant was convicted of aggravated battery. See State v. Lyles , 17-405 (La. App. 5 Cir. 2/21/18), 239 So.3d 1055, 1056. On November 18, 2016, the State filed a habitual offender bill of information against defendant, alleging that he was a third felony offender with a 1991[1] predicate conviction of distribution of cocaine and a 2004 predicate conviction of manslaughter. The hearing on defendant's habitual offender bill was held on February 13, 2017. During the course of this hearing, the trial court sentenced defendant for the aggravated battery conviction to eight years imprisonment with the Department of Corrections and imposed a $1,000 fine. Id. After an evidentiary hearing on the habitual offender bill, the trial court found defendant to be a third felony offender and sentenced him to life imprisonment without the benefit of parole, probation or suspension of sentence in accordance with La. R.S. 15:529.1(A)(3)(b). Defendant filed a motion to reconsider his sentence, which the trial court denied. Defendant's original appeal followed. Id.
On original appeal, this Court found that the trial court failed to vacate defendant's original sentence for aggravated battery before imposing defendant's habitual offender sentence. As a result, it vacated defendant's habitual offender sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence as a third felony offender and remanded the matter for resentencing. See State v. Lyles , 239 So.3d at 1057.
According to this Court's directive, a resentencing hearing was held on March 12, 2018. Prior to the imposition of defendant's habitual offender sentence, defense counsel argued that defendant should be sentenced under the "new" habitual offender statute, which would reduce his sentencing range as a third felony offender. Defense counsel argued that current law was applicable since defendant's previous habitual offender sentence was vacated. The State responded that the Louisiana Supreme Court has held that the habitual offender law in effect at the time of the commission of the charged offense is applicable to a habitual offender. The trial court agreed with the State's position and stated that it would note the defense's *934 objection. The trial court then vacated defendant's original sentence of eight years in the Department of Corrections, recognizing that the State had met its burden of proof during the habitual offender proceeding, and sentenced defendant to life imprisonment without the benefit of parole, probation, or suspension of sentence. On March 28, 2018, defendant filed a timely motion for appeal, which was granted on March 29, 2018.
FACTS
The facts set forth in this Court's published opinion are as follows:
Defendant and Imani Wilson met in 1992 and were involved in a relationship off and on for several years. In 2014, Ms. Wilson agreed to allow defendant to stay with her for a limited period of time. In January 2015, Ms. Wilson asked defendant to leave and offered to help him find work and a new residence. On February 1, 2015, defendant, Ms. Wilson, and her two (2) children from another relationship were at Ms. Wilson's home, and defendant informed Ms. Wilson that he would move out that week. That same day, while Ms. Wilson was in the kitchen cooking, defendant began staring at her and continued to do so for an extended period. Eventually, Ms. Wilson asked defendant why he was staring at her, and he did not respond. Because defendant continued to stare at her, she became nervous and warned her children who were home that they should call 9-1-1 if they heard anything.
After some time had passed, defendant began to approach Ms. Wilson and grabbed her by the throat with his left hand while simultaneously reaching for a knife with his other hand. Ms. Wilson pried defendant's fingers from her throat and ran from him. She fell and defendant held her down and grabbed her around the throat again. Defendant attempted to stab Ms. Wilson, and she tried to block the knife. She eventually blacked out and could not remember additional details. One of Ms. Wilson's children heard the commotion and called 9-1-1. The police arrived at the house before defendant was able to get away and arrested him for aggravated battery.
State v. Lyles , 239 So.3d at 1056.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant contends that the trial court erred in sentencing him as a third felony offender. Defendant argues that he should have been sentenced as a second felony offender under the 2017 legislative changes to La. R.S. 15:529.1, the habitual offender statute. According to defendant, the language of 2017 La. Acts No. 282, effective November 1, 2017, applies to him since his conviction did not become final until February 21, 2018, the date this Court rendered its decision in his first appeal. Defendant suggests that under these new provisions, he is a second felony offender since more than five years elapsed between the expiration of correctional supervision of his 1991 predicate conviction of distribution of cocaine and the commission of the underlying offense of aggravated battery. He asserts that the ameliorative provisions of Act 282 applied to his case, and as such, his mandatory sentence of life imprisonment would drastically be reduced as he would thus face a sentencing range of 3.3 to 20 years imprisonment.
The State responds that despite the language of Act 282, the legislature has recently clarified that the courts should apply the version of the habitual offender statute in effect at the time of the commission of the underlying offense. The State *935 relies on the 2018 amendment to the habitual offender statute, subsection K, in support of this contention and argues that subsection K removes the prior confusion over the applicability of the 2017 amendments to those offenders whose cases were still on direct review.
In 2017, the habitual offender statute, La. R.S. 15:529.1, was amended by 2017 La. Acts No. 257, § 1 and 2017 La. Acts No. 282, § 1. Acts 257 and 282 both explicitly provide that their provisions "shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." 2017 La. Acts 257, § 2; 2017 La. Acts 282, § 2. The relevant 2017 amendments to La. R.S. 15:529.1(A)(3)(b) removed persons with a current or prior felony that was a violation of the Uniform Controlled Dangerous Substance Law punishable for ten or more years from the group of persons subject to a life sentence as a third felony offender.
Defendant asserts that the 2017 version of the Habitual Offender Law should apply to his case. Defendant's underlying felony and one of his prior felonies, aggravated battery and manslaughter, respectively, are both crimes of violence. His 1991 predicate conviction of distribution of cocaine is a violation of the Uniform Controlled Dangerous Substance Law punishable by ten or more years. See La. R.S. 40:967(B). Under the prior version of La. R.S. 15:529.1(A)(3)(b), defendant was subject to a mandatory sentence of life imprisonment without benefits. Defendant argues, however, that with the application of 2017 amendments, including the amended cleansing periods set forth in La. R.S. 15:529.1(C)(1), he should have been adjudicated as a second felony offender rather than a third felony offender.[2] If adjudicated as a second felony offender, defendant would have faced a sentencing range of 3.3 to 20 years imprisonment under La. R.S. 15:529.1(A)(1).
In the present matter, defendant was convicted of aggravated battery in violation of La. R.S. 14:34, and the State proved at trial that the crime occurred on February 1, 2015. See State v. Lyles , 239 So.3d at 1056. On November 18, 2016, the State filed the habitual offender bill alleging that defendant was a third felony offender. On February 13, 2017, defendant was adjudicated as a third felony offender and was sentenced to life imprisonment without benefits. Also on that date, defendant filed a motion for an appeal, stating no particular grounds, which was granted on February 16, 2017. On appeal, defendant did not challenge his conviction: he only assigned one error-that his habitual offender sentence was constitutionally excessive. This Court rendered its decision on February 21, 2018, finding that the trial court failed to vacate defendant's original sentence and remanded the matter for resentencing. See State v. Lyles , supra . Defendant did not file a writ application with the Louisiana Supreme Court. Thus, defendant's underlying conviction became final under La. C.Cr.P. art. 922[3] fourteen days after February 21, 2018, when the *936 delay for applying for a rehearing expired.[4]
While La. R.S. 15:529.1 was revised in 2017 by Acts 257 and 282, it is well settled law that habitual offender proceedings do not charge a separate crime, but merely constitute ancillary sentencing proceedings such that the punishment for a new conviction is enhanced, and jurisprudence, including that of this Court, has held that the sentence to be imposed is that in effect at the time of the commission of the offense. See State v. Parker , 03-924 (La. 4/14/04), 871 So.2d 317, 327 ("the punishment to be imposed on defendant, a habitual offender, is that provided by La. R.S. 15:529.1 as it existed on the date he committed the underlying offense."); State v. Sugasti , 01-3407 (La. 6/21/02), 820 So.2d 518, 522 ("Everyone is presumed to know the law, including the penalty provisions that apply. As such, those who engage in criminal activity must face the consequences of their actions, including the penalty provisions that apply as of the date of the offense."); State v. Williams , 03-571 (La. App. 5 Cir. 11/12/03), 862 So.2d 108, 119, writ denied , 04-0051 (La. 5/21/04), 874 So.2d 171 ("[T]his Court has consistently held that the date of the commission of the offense controls the penalty to be applied in multiple offender sentencing. From our earliest decisions on the subject until our more recent pronouncement, we have been unwavering on this issue.").
Additionally, on August 1, 2018, La. R.S. 15:529.1 was again amended and now includes subsection K. La. R.S. 15:529.1(K)(1) provides that, except for a condition not applicable to this case, "notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." 2018 La. Acts No. 542, § 1. Subsection (K)(2) provides:
The provisions of Subsection C of this Section as amended by Act Nos. 257 and 282 of the 2017 Regular Session of the Legislature, which provides for the amount of time that must elapse between the current and prior offense for the provisions of this Section to apply, shall apply to any bill of information filed pursuant to the provisions of this Section on or after November 1, 2017, accusing the person of a previous conviction.[5]
*937 In State v. Floyd , 52,183 (La. App. 2 Cir. 8/15/18), 254 So.3d 38, the defendant separately appealed his third felony habitual offender mandatory life sentence at hard labor without benefits and argued his enhanced sentence was excessive. On original appeal, the Second Circuit affirmed his underlying conviction on June 27, 2018. See State v. Floyd , 51,869 (La. App. 2 Cir. 6/27/18), 250 So.3d 1165. There, the defendant conceded that his offense occurred before the 2017 amendment, but he nonetheless urged the Second Circuit to lower his sentence. The court upheld the defendant's sentencing, stating:
This court is sensitive to the reality that Floyd will not benefit from the leniency of the 2017 amendment because his offense occurred before it took effect . However, the legislature specified that the amendment would have "prospective application only," and a subsequent amendment further clarified that courts "shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." In other words, the legislature clearly stated its intent to diminish the penalties for certain habitual offenders, but equally clearly stated its intent not to reopen or relitigate cases that arose before the effective date. The jurisprudence also holds that the version of the Habitual Offender Law in effect at the time of the crime is the version that applies; amended provisions apply only to offenses committed after their effective dates . State v. Parker , supra ; State v. Casaday , supra [51,947 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1057] ; State v. Barker , supra . We therefore cannot adopt Floyd's premise of using the 2017 amendment as a convenient metric to find his sentence excessive.
Id. at 43 (emphasis added).
Moreover, in Floyd , the court also stated that:
This court is aware of an unpublished opinion, State v. Purvis , 2017-1013 (La. App. 3 Cir. 4/18/18), 244 So.3d 496, [2018 WL 1834007], in which a divided Third Circuit applied the amended version of R.S. 15:529.1 to an offense that occurred in September 2015, over two years before the amendment took effect. This court would decline to follow Purvis , in light of the jurisprudence, but we consider it effectively abrogated by the 2018 enactment of R.S. 15:529.1(K)(1).
Id. at 43 n. 2.[6] [7]
In *938 State v. Barker , 17-0469, --- So.3d ----, ----, 2018 WL 2426455, at *32-33, 2018 La. App. LEXIS 1098, at *87-89 (La. App. 4 Cir. 5/30/18), the Fourth Circuit held that the version of the Habitual Offender Law in effect at the time of the underlying offense was the correct law applicable to the defendant. In Barker , which was decided following the effective date of the 2017 amendments, the defendant asserted that the court erred in sentencing him under the habitual offender statute that was in effect at the time the fourth felony was committed and instead should have sentenced him under the 2017 version of the statute, which was over two years after the underlying offense occurred and four months after the defendant's habitual offender adjudication.
The Fourth Circuit disagreed with the defendant's assertion, finding that a defendant should be sentenced in accordance with the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense. It referenced Parker , supra , where the Louisiana Supreme Court discussed the public policy behind applying ameliorative changes to the Habitual Offender Law:
[I]f we were to find a defendant's status as a second offender was fixed as of any date other than the commission of the offense, "it would be within the power of the district attorneys and the Attorney General, by delaying the filing of the charges and prosecution of the case, to fix the accused's status as a second offender at practically any time he desired." [ State v. ] Dreaux ] [, 205 La. 387] at 392, 17 So.2d [559] at 560 [ (1944) ]. Thus, we also found public policy dictated that defendant's habitual offender status be fixed as of the date of the commission of the crime since this allows defendant's own act to establish his status rather than leaving the matter in the discretion of government attorneys.
Id. at *32-33, 2018 La. App. LEXIS 1098, at *88. Thus, the Court found that the trial court correctly sentenced the defendant based on the time he committed the offenses in 2015 and applied the sentencing provision in effect at the time of the commission of the offenses. Id. at *33, 2018 La. App. LEXIS 1098, at *89.
Upon review, we rely on the well settled jurisprudence that the law in effect at the time of the offense is determinative of a defendant's punishment, including for habitual offender proceedings. See Parker , supra ; Sugasti , supra ; Williams , supra , 862 So.2d 108. Further, we find that by enacting subsection K, the legislature clarified its original intent that the date of commission of the underlying offense be used to determine the sentencing provision applicable to a habitual offender, except as otherwise explicitly provided in the statute. Therefore, after review, we find that the Habitual Offender Law in effect at the time of the commission of defendant's underlying offense of aggravated battery should be applied in determining defendant's habitual offender sentence, and the trial court did so correctly when imposing defendant's enhanced sentence of life imprisonment without benefits.
At the time of the instant offense on February 1, 2015, La. R.S. 14:34(B) provided, in pertinent part, that an offender who commits aggravated battery shall be punished by a fine of not more than five thousand dollars, imprisonment with or without hard labor for not more than ten years, or both.
Also at that time, La. R.S. 15:529.1(A)(3)(b) provided:
If the third felony and the two prior felonies are felonies defined as a crime *939 of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Accordingly, we find that the 2015 version of La. R.S. 15:529.1(A)(3)(b) is the sentencing provision applicable to defendant herein because his third felony (the aggravated battery conviction) and his predicate conviction of manslaughter are crimes of violence under La. R.S. 14:2(B)(5) and La. R.S. 14:2(B)(4), respectively. Additionally, defendant's 1991 conviction for distribution of cocaine in violation of La. R.S. 40:967(A) was a violation of the Uniform Controlled Dangerous Substance Law punishable by ten years of imprisonment or more. La. R.S. 40:967(B)(4). Under the habitual offender statute as it existed at the time of the commission of the underlying offense of aggravated battery, defendant was subject to an enhanced mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. See La. R.S. 15:529.1(A)(3)(b). For the foregoing reasons, we find that the trial court correctly applied the Habitual Offender Law in effect in 2015 in sentencing defendant. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, defendant argues in the alternative that his sentence of life imprisonment is unconstitutionally excessive under State v. Dorthey , 623 So.2d 1276 (La. 1993), due to its gross disproportionality to the severity of the crime and because it results in a needless infliction of pain and suffering. He suggests that this case is an example of one of the primary reasons behind the escalating growth of Louisiana's industrial prison complex, and the weightiest penalties are not reserved for the most serious crimes or the most dangerous offenders. He contends that he showed remorse for the victim's injuries, and a downward departure is warranted under the facts of this case.
The State responds that defendant has not shown that his case is exceptional, warranting a downward departure from the mandatory minimum sentence under the Habitual Offender Law. It notes that defendant has a history of violent offenses, including the underlying offense of aggravated battery, and requests that this Court affirm defendant's enhanced sentence.
The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for unconstitutional excessiveness. State v. Francois , 17-471 (La. App. 5 Cir. 3/14/18), 242 So.3d 806, 819. The record reflects that although defendant orally objected to the sentence at the hearing on March 12, 2018, he failed to file a motion to reconsider sentence. On appeal, he now contends, despite the imposition of a mandatory life sentence, that the trial court should have considered the circumstances of his case to determine whether a downward departure was warranted based on his "exceptional" circumstances. By failing to raise these arguments in a motion to reconsider sentence, we find that defendant is limited to a bare review of his *940 sentence for unconstitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it may be reviewed for unconstitutional excessiveness. State v. Harris , 17-303 (La. App. 5 Cir. 12/20/17), 235 So.3d 1354, 1376, writ denied , 18-0160 (La. 6/15/18), 257 So.3d 675, 2018 WL 6566972, 2018 La. LEXIS 1608. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. Id.
The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for unconstitutional excessiveness. State v. Taylor , 06-839 (La. App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied , 06-0859 (La. 6/15/07), 958 So.2d 1179. When a trial court determines that the minimum sentence mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be unconstitutionally excessive. Taylor , 956 So.2d at 27-28 ; State v. Douglas , 03-1266 (La. App. 5 Cir. 2/23/04), 868 So.2d 896, 900, writ denied , 04-0955 (La. 10/1/04), 883 So.2d 1006.
However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. Francois , 242 So.3d at 820 ; Taylor , 956 So.2d at 28. In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." Id.
Downward departures from the minimum sentence mandated by La. R.S. 15:529.1 should only occur in rare situations. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Taylor , 956 So.2d at 28. Compliance with sentencing guidelines pursuant to La. C.Cr.P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law. Harris , 235 So.3d at 1377 ; State v. Jenkins , 07-586 (La. App. 5 Cir. 1/22/08), 977 So.2d 142, 148.
In the present matter, defendant was sentenced as a third felony offender under La. R.S. 15:529.1(A)(3)(b). As previously discussed, upon defendant's adjudication as a third felony offender, with the instant and one predicate conviction being crimes of violence, and one predicate conviction of violating the Uniform Controlled Dangerous Substance Law punishable by ten years imprisonment or more, defendant was subject to a mandatory life sentence without the benefit of parole, probation, or suspension of sentence. Defendant was sentenced accordingly.
*941 Upon review, we find that defendant has failed to meet his burden of rebutting the presumption of constitutionality. Defendant here knew the victim for several decades, and the victim had allowed defendant to stay with her temporarily. Defendant became angry when the victim asked him to leave, after she offered to help the victim find another place to live and a job, and he grabbed the victim by her throat and choked her more than once as she tried to get away from him. Defendant attempted to stab the victim with a knife while her children were in the home, the victim blacked out, and one of her children eventually called 9-1-1 after hearing what was going on. The facts of this case fail to show that defendant showed any remorse, but rather, that the police arrived before defendant was able to get away from the house. Additionally, this Court has found that if the trial judge who imposed the sentence on a defendant's underlying conviction is the same judge who imposes the enhanced sentence in a habitual offender adjudication, that judge is deemed to have been aware of the nature of the crime for the underlying conviction. Harris , 235 So.3d 1354, 1377-78. Here, the same trial judge who presided over defendant's conviction and sentencing on the underlying offense was the same judge who presided over his adjudication and sentencing as a habitual offender, and who was thus aware that defendant committed aggravated battery upon the victim and of defendant's criminal history.
Further, defendant has a prior conviction of a crime of violence, manslaughter. Therefore, we find that the record fails to indicate that defendant is the type of offender contemplated by the Louisiana Supreme Court in Dorthey , supra , warranting a downward deviation from the mandatory sentence. Defendant has not demonstrated that a reduction from the mandatory sentence was warranted in this case. As such, we find that defendant's mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence as a third felony offender was not excessive, and the trial court did not err in imposing the sentence. Accordingly, we affirm defendant's enhanced sentence. This assignment of error is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
When defendant received an errors patent review upon his original appeal, a sentencing error was found and addressed by this Court, after which this Court remanded the case to the trial court for habitual offender resentencing. While defendant is not entitled to a second errors patent review of his underlying conviction and sentence, the record on appeal regarding defendant's habitual offender resentencing was reviewed. See State v. Wise , 14-378 (La. App. 5 Cir. 10/15/14), 182 So.3d 63, 79, writ denied , 14-2406 (La. 9/18/15), 178 So.3d 143 ; State v. Taylor , 01-452 (La. App. 5 Cir. 11/14/01), 802 So.2d 779, 783-784, writ denied , 01-3326 (La. 1/10/03), 834 So.2d 426.
The sentencing transcript indicates that the trial judge imposed a sentence on defendant of life imprisonment without the benefit of parole, probation, or suspension of sentence. The sentencing minute entry reflects that defendant received a sentence of "life." Therefore, the sentencing transcript and the minute entry fail to reflect that defendant's life sentence of imprisonment as a third felony offender was to be served at hard labor.
*942 La. C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at hard labor is an impermissible indeterminate sentence. State v. Thomas , 15-759 (La. App. 5 Cir. 5/12/16), 192 So.3d 291, 309, writ denied , 16-1085 (La. 5/19/17), 219 So.3d 335. However, when the underlying statute requires the sentence to be served at hard labor, allowing no discretion to the trial judge, the error is harmless. State v. Stewart , 10-389 (La. App. 5 Cir. 5/10/11), 65 So.3d 771, 783-84, writ denied , 11-1245 (La. 1/20/12), 78 So.3d 140. Here, defendant was sentenced as a third felony offender, a sentence required to be served at hard labor. La. R.S. 15:529.1(G). Thus, because La. R.S. 15:529.1 affords the trial judge no discretion, the error was harmless, the sentence is not an impermissible indeterminate sentence, and no corrective action is necessary.
Next, we find that the Uniform Commitment Order (UCO) and the sentencing minute entry contain some inconsistencies with the transcript. First, the UCO incorrectly provides the district court number as "22015-CR-42", when the district court docket number actually is "2015-CR-42." Further, the UCO fails to indicate in the "Adjudication/Sentence" portion that defendant's sentence was a habitual offender sentence or that his life sentence was to be served without the benefit of parole, probation, or suspension of sentence. The sentencing minute entry merely reflects that defendant received a sentence of "life" and is silent as to the restrictions of benefits. Accordingly, we remand the matter for correction of the sentencing minute entry and the UCO in these aspects and further direct the Clerk of Court for the 40th Judicial District Court to transmit the original of the corrected commitment and UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. See State v. Lyons , 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied , 14-481 (La. 11/7/14), 152 So.3d 170.
Finally, it is noted that following defendant's resentencing, the trial judge stated: "I'm going to give you those typical delays of two years to file a petition for post conviction relief post-sentencing." The sentencing minute entry provides that the trial court "acknowledge[d] defendant has a two (2) year prescriptive in which to file for post-conviction relief, that period to commence after judgment of conviction and sentence have become final." Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch , 441 So.2d 732, 734 (La. 1983).
It is well settled that if a trial court provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09-0248 (La. 10/30/09), 21 So.3d 272. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
CONCLUSION
For the foregoing reasons, defendant's habitual offender sentence is affirmed. The matter is remanded for correction of the sentencing minute entry and the Uniform Commitment Order as set forth herein.
*943 AFFIRMED; REMANDED FOR CORRECTION OF SENTENCING MINUTE ENTRY AND UNIFORM COMMITMENT ORDER

In its published opinion, this Court stated that defendant had a 1990 predicate conviction of distribution of cocaine. However, review of the habitual offender exhibits indicate that defendant pled guilty to distribution of cocaine on May 31, 1991 and that the offense occurred in October of 1990.

According to the original habitual offender hearing, defendant received a sentence of five years of probation for his 1991 conviction for distribution of cocaine, which ended on May 21, 1996. Defendant committed the crime of manslaughter on September 30, 2003. Thus, applying the reduced cleansing period of five years, defendant's conviction of distribution of cocaine could not be used as a predicate offense for his habitual offender adjudication.

La. C.Cr.P. art. 922(B) provides: "A judgment rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made."

In defendant's first appeal, this Court did not consider the merits of his assignment of error; its opinion decreed as follows: "HABITUAL OFFENDER SENTENCE VACATED; REMANDED FOR RESENTENCING." State v. Lyles , 239 So.3d at 1057. This Court has affirmed underlying convictions even when the defendants have only challenged their habitual offender proceedings on appeal and not their underlying convictions. See , e.g. , State v. Davis , 01-123 (La. App. 5 Cir. 7/30/01), 792 So.2d 126, 129-32 ; State v. Windham , 98-100 (La. App. 5 Cir. 5/27/98), 712 So.2d 1057, 1058-60, writ denied , 99-1110 (La. 6/4/99), 744 So.2d 627 ; State v. Balser , 96-443 (La. App. 5 Cir. 11/14/96), 694 So.2d 351, 352, 354. See also State v. Bell , 471 So.2d 1190, 1191, 1194 (La. App. 3rd Cir. 1985), writ denied , 85-1556 (La. 1985), 477 So.2d 97.

The April 25, 2018 video of the House Committee on Administration of Criminal Justice where the proposed legislation of H.B. 253, eventually subsection K, was presented sheds light on the legislative intent of the 2018 amendment to La. R.S. 15:529.1. Representative Marino, who handled H.B. 253 on behalf of Representative Connick, indicated that it was brought on behalf of the Louisiana District Attorneys Association ("LDAA") to provide clarification to the 2017 changes of the Habitual Offender Law as the prior version did not specifically state when old or new Habitual Offender Law applied as to sentencing or calculation of the cleansing periods. Representative Marino clarified that the intended effect of the 2017 amendment was for the reduced cleansing periods to apply to any habitual offender bills filed on or after November 1, 2017, and habitual offender bills used prior to that date would use the previous cleansing periods. Jerry Fortunato spoke and indicated that this was the intention of the Justice Reinvestment Initiative ("JRI") legislation that the LDAA had participated in creating the previous year, and this was the original intention of the 2017 amendment. See Video of Hearing on H.B. 253 Before the H. Comm. on Administration of Justice, 2018 Reg. Sess., at 3:19 to 3:29 (La. April 25, 2018).

In State v. Purvis , 17-1013 (La. App. 3 Cir. 4/18/18), 244 So.3d 496, a majority of the Third Circuit found that the 2017 version of the Habitual Offender Law applied to the defendant, who committed the underlying offense in 2015 and who was sentenced prior to November 1, 2017, because his underlying aggravated arson conviction would not become final until after November 1, 2017, due to his filing of a timely writ application in the Supreme Court.

Floyd , supra , does not mention the Louisiana Supreme Court's decision in State v. Williams , 17-1753 (La. 6/15/18), 245 So.3d 1042 (per curiam ), where the Court granted the defendant's application to vacate his enhanced sentence for armed robbery and remanded for resentencing under 2017 La. Acts 282 after finding that the defendant's appeal was pending when the legislature amended the Habitual Offender Law with 2017 La. Acts 282. Significantly, it noted that the State conceded that the defendant was entitled to be resentenced in accordance with the legislative changes because his conviction did not become final until after November 1, 2017.